# HEPNER *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 626.  Argued March 2, 1909.—Decided April 5, 1909.

A penalty may be recovered by a civil action, although such an action may be so far criminal in its nature that the defendant cannot be compelled to testify against himself therein in respect to any matter involving his being guilty of a criminal offense.

A suit brought by the United States to recover the penalty prescribed by §§ 4 and 5 of the Alien Immigration Act of March 3, 1903, c. 1012, 32 Stat. 1213, is a civil suit and not a criminal prosecution, and when it appears by undisputed testimony that a defendant has committed an offense against those sections the trial judge may direct a verdict in favor of the Government.

THE facts, which involve the right of a trial judge to direct a verdict in favor of the Government in an action for penalty

for violation of the Alien Immigration Law, are stated in the opinion.

*Mr. S. P. McConnell*, for William Hepner, submitted.

*Mr. Assistant Attorney General Ellis*, with whom *Mr. Edwin P. Grosvenor* was on the brief, for the United States.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action of debt was brought by the United States to recover a penalty under the statute of Congress of March 3, 1903, regulating the immigration of aliens into this country. 32 Stat. 1213, 1214, c. 1012. The case is now before this court upon a question certified by the judges of the Circuit Court of Appeals under the authority of § 6 of the Judiciary Act of March 3, 1891. 26 Stat. 826, c. 517.

Sections 4 and 5 of the act of 1903, are as follows:

"SEC. 4. That it shall be unlawful for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any alien into the United States, in pursuance of any offer, solicitation, promise, or agreement, parole or special, expressed or implied, made previous to the importation of such alien to perform labor or service of any kind, skilled or unskilled, in the United States.

"SEC. 5. That for every violation of any of the provisions of section four of this act the person, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any alien to the United States to perform labor or service of any kind by reason of any offer, solicitation, promise, or agreement, express or implied, parole or special, to or with such alien shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action there-

for in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States."

In the present action there was a judgment for the United States against the defendant Hepner for the prescribed penalty of one thousand dollars. It is certified by the judges of the Circuit Court of Appeals, to which the case was taken upon writ of error, that the testimony showed that an alien was induced by an offer, solicitation, or promise of the defendant to migrate to the United States for the purpose of performing labor here.

The question propounded to this court by the judges of the Circuit Court of Appeals is: "When it appears by *undisputed testimony* that a defendant has committed an offense against secs. 4 and 5 of the act of March 3, 1903, may the trial judge *direct* a verdict *in favor of* the Government, plaintiff, which has sued for the $1,000 forfeited by such offense under said section 5?"

Is this to be deemed as, in all substantial respects, a civil suit as distinguished from a strictly criminal case or criminal prosecution? This must be first determined before answering the specific question propounded by the judges below. It is well to look at some of the adjudications in suits for statutory penalties.

In *Stockwell* v. *United States*, 13 Wall. 531, 542, 543—which was an action of debt brought by the United States to recover forfeitures and penalties incurred under the act of Congress of March 3, 1823, 3 Stat. 781, c. 58, relating to the entry of merchandise imported into the United States from any adjacent territory—the question arose whether a civil action could be maintained by the Government. That act provided, among

other things, that any one receiving, concealing, or buying goods, wares or merchandise, knowing them to have been illegally imported and liable to seizure, "shall, on conviction thereof, forfeit and pay a sum double the amount or value of the goods, wares, or merchandise, so received, concealed, or purchased." The defendant in that case insisted that the Government could not proceed by a civil suit to recover the penalty specified in the statute—based, as that penalty was, on an offense against law—except by indictment or information. The court rejected that view, and, speaking by Mr. Justice Strong, said: "No authority has been adduced in support of this position, and it is believed that none exists. It cannot be that whether an action of debt is maintainable or not depends upon the question who is the plaintiff. Debt lies whenever a sum certain is due to the plaintiff, or a sum which can readily be reduced to a certainty—a sum requiring no future valuation to settle its amount. It is not necessarily founded upon contract. It is immaterial in what manner the obligation was incurred, or by what it is evidenced, if the sum owing is capable of being definitely ascertained. The act of 1823 fixes the amount of the liability at double the value of the goods received, concealed, or purchased, and the only party injured by the illegal acts, which subject the perpetrators to the liability, is the United States. It would seem, therefore, that whether the liability incurred is to be regarded as a penalty, or as liquidated damages for an injury done to the United States, it is a debt, and as such it must be recoverable in a civil action. But all doubts respecting the matter are set at rest by the fourth section of the act, which enacted that all penalties and forfeitures incurred by force thereof shall be sued for, recovered, distributed, and accounted for in the manner prescribed by the act of March 2, 1799, entitled 'An act to regulate the collection of duties on imports and tonnage.' By referring to § 89 of that act, March 2, 1799, c. 22, 1 Stat. 627, 695, it will be seen that it directs all penalties, accruing by any breach of the act, to be sued for and recovered, with costs of suit, in the name of the United States

of America, in any court competent to try the same; and the collector, within whose district a forfeiture shall have been incurred, is enjoined to cause *suits* for the same to be commenced without delay. This manifestly contemplates civil actions, as does the proviso to the same section, which declares that no *action* or prosecution shall be maintained in any case under the act, unless the same shall have been commenced within three years after the penalty or forfeiture was incurred. Accordingly, it has frequently been ruled that debt will lie, at the suit of the United States, to recover the penalties and forfeitures imposed by statutes. It is true that the statute of 1823 imposes the forfeiture and liability to pay double the value of the goods received, concealed, or purchased, with knowledge that they had been illegally imported, 'on conviction thereof.' It may be, therefore, that an indictment or information might be sustained. But the question now is, whether a civil action can be brought, and, in view of the provision that all penalties and forfeitures incurred by force of the act shall 'be sued for and recovered,' as prescribed by the act of 1799, we are of opinion that debt is maintainable. The expression, 'sued for and recovered' is primarily applicable to civil actions, and not to those of a criminal nature."

In *Jacob* v. *United States*, 1 Brock. 520, 525, the question arose whether the United States could maintain an action of debt to recover the specific sum which an act of Congress (December 21, 1814, c. 15, 3 Stat. 152, 155), providing for additional revenue declared should be forfeited and paid by any person guilty of the offense of forcibly rescuing or causing to be arrested, any spirits, etc., after the same had been seized by the collector. Chief Justice Marshall held that an action of that kind was a "civil cause" (September 24, 1789, c. 20 p. 73, 1 Stat. 73, 76), within the meaning of the ninth section of the Judiciary Act of 1789, defining the jurisdiction of the District Courts of the United States. In *Stearns* v. *United States*, 2 Paine, 300, Mr. Justice Thompson, in the Circuit Court of the United States for the District of Vermont, held that actions

for penalties were civil actions, both in form and in substance—
citing 3 Blackstone's Com. 158, and *Atcheson* v. *Everitt*, 1 Cowp.
382, 391. In the latter case, which was an action of debt, based
upon an English statute, Lord Mansfield said that a penal action
"is as much a civil action as an action for money had and re-
ceived." A similar ruling was made by Mr. Justice Iredell in
*United States* v. *Mundell*, 1 Hughes, 415, 423 (6 Call, 245, 253),
which was an action of debt by the United States to recover a
penalty prescribed by an act of Congress. The court said: "It is
scarcely necessary to stop here to observe, that the proceeding in
question was not a proceeding in a criminal case within the
meaning of the provisions of Congress, but was in truth a civil
suit, though for an act of disobedience for which a criminal prose-
cution might possibly have been commenced, if the act of Con-
gress does not expressly, or impliedly, exclude it; a point not
now material to consider, because the civil suit has, in this
instance, been in fact adopted. A criminal proceeding, un-
questionably, can only be by indictment, or information. The
proceeding in question was neither." Similar views as to the
civil nature of actions for penalties were expressed in *United
States* v. *Younger*, 92 Fed. Rep. 672; *United States* v. *B. & O.
S. W. R. Co.*, 159 Fed. Rep. 33, 38; *Hawlowetz* v. *Kass*, 23
Blatch. 395. See, also, *Chaffee & Co.* v. *United States*, 18 Wall.
516, 538; *Wilson* v. *Rastall*, 4 Term, 753; *Roberge* v. *Burnham*,
124 Massachusetts 277, 279; *People* v. *Briggs*, 114 N. Y. 56,
64, 65; *Mitchell* v. *State*, 12 Nebraska, 538, 540; *Webster* v.
*People*, 14 Illinois, 365, 367; *Hitchcock* v. *Munger*, 15 N. H.
97, 103, 134; *State* v. *Brown*, 16 Connecticut, 54, 59.

It must be taken as settled law that a certain sum, or a sum
which can readily be reduced to a certainty, prescribed in a
statute as a penalty for the violation of law, may be recovered
by civil action, even if it may also be recovered in a proceeding
which is technically criminal. Of course, if the statute by which
the penalty was imposed contemplated recovery only by a
criminal proceeding, a civil remedy could not be adopted.
*United States* v. *Claflin*, 97 U. S. 546. But there can be no

doubt that the words of the statute on which the present suit is based are broad enough to embrace, and were intended to embrace, a civil action to recover the prescribed penalty. It provides that the penalty of one thousand dollars may be "sued for" and recovered by the United States or by any "person" who shall first bring his "action" therefor "in his own name and for his own benefit," " as debts of like amount are now recovered in the courts of the United States;" and "separate suits" may be brought for each alien thus promised labor or service of any kind. . The district attorney is required to prosecute every such "suit" when brought by the United States. These references in the statute to the proceeding for recovering the penalty plainly indicate that a civil action is an appropriate mode of proceeding.

A case to which attention is called by both sides is *United States* v. *Zucker,* 161 U. S. 475, 481. What was that case? It makes, we think, for the Government rather than the defendant; for, that was a *civil* action to recover from the defendants a certain sum as the value of merchandise originally belonging to them and alleged to have been forfeited to the United States under the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, 135. That act provided in reference to merchandise entered by means of fraudulent or false invoices, etc., that " such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited, . . . and such person shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the court." § 9. At the trial, the Government offered in evidence, against the defendants, a deposition taken in Paris, properly authenticated. It was not objected, in that case, that a civil action could not be brought by the Government to recover the penalty prescribed. The question considered was whether a deposition of an absent witness could be used against the objection of the defendants, who insisted that the action, although civil in form, was, in substance, a criminal case, and that they

were, for that reason, entitled, under the Sixth Amendment
of the Constitution, to be confronted, in court, with the wit-
nesses against them.  The objection was sustained by the trial
court, but this court, upon writ of error sued out by the United
States, held that that Amendment related to a prosecution of
an accused that was technically criminal in its nature.  The
court said: "The words in the Sixth Amendment, 'to be in-
formed of the nature and cause of the accusation,' obviously
refer to a person accused of crime, whether a felony or misde-
meanor for which he is prosecuted by indictment or present-
ment, or in some other authorized mode which may involve his
personal security.  So the clause declaring that the accused,
in a criminal prosecution, is entitled 'to be confronted with the
witnesses against him,' has no reference to any proceeding
(although the evidence therein may disclose, of a necessity, the
commission of a public offense) which is not directly against a
person who is accused, and upon whom a fine or imprisonment,
or both, may be imposed.  A witness who proves facts entitling
the plaintiff in a proceeding in a court of the United States,
even if the plaintiff be the Government, to a judgment for
money only, and not to a judgment which directly involves
the personal safety of the defendant, is not, within the meaning
of the Sixth Amendment, a witness against an 'accused' in a
criminal prosecution; and his evidence may be brought before
the jury, in the form of a deposition, taken as prescribed by the
statutes regulating the mode in which depositions to be used
in the courts of the United States may be taken.  The defend-
ant, in such a case, is no more entitled to be confronted at the
trial with the witnesses of the plaintiff than he would be in a
case where the evidence related to a claim for money that could
be established without disclosing any facts tending to show the
commission of crime."  Again: "An action, in which a judgment
for money only is sought, even, if in some aspects it is one of a
penal nature, may be brought wherever the defendant is found
and is served with process, unless some statute requires it to be
brought in a particular jurisdiction."

Two things, then, appear from the *Zucker case:* 1. That it recognized an action to recover a penalty to be a civil action, and a proper mode of procedure. 2. That in such an action the defendant was not entitled, by virtue of the Constitution, to be confronted in court with the witnesses against him. No such question as the last one arises in this case. But the decision in the *Zucker case* is important in that it recognizes the right of the Government, by a civil action of debt, to recover a statutory penalty, although such penalty arises from the commission of a public offense. It is important also in that it decides that an action of that kind is not of such a criminal nature as to preclude the Government from establishing, according to the practice in strictly civil cases, its right to a judgment by depositions taken in the usual form, without confronting the defendant with the witnesses against him.

The defendant insists that the case of *Lees* v. *United States,* 150 U. S. 476, 480, is an authority in his favor. This view cannot be sustained. That case was a civil action to recover a penalty for importing an alien into the United States to perform labor, in violation of the act of February 26, 1885. 23 Stat. 332, c. 164. In that case the trial court compelled one of the defendants to testify for the United States and furnish evidence against himself. This court held that that could not be done, saying that "this, though an action civil in form, is unquestionably criminal in its nature, and in such a case a defendant cannot be compelled to be a witness against himself," meaning thereby only that the action was not of such a criminal nature as to prevent the use of depositions. Among the authorities cited in the *Lees case* was *Boyd* v. *United States,* 116 U. S. 616, 634. In the latter case it was adjudged that penalties and forfeitures incurred by the commission of offenses against the law are of such a *quasi*-criminal nature that they come within the reason of criminal proceedings for the purposes of the Fourth Amendment of the Constitution and of that part of the Fifth Amendment declaring that no person shall be compelled in any criminal case to be a witness against himself.

So that the *Lees* and *Boyd cases* do not modify or disturb but recognize the general rule that penalties may be recovered by civil actions, although such actions may be so far criminal in their nature that the defendant cannot be compelled to testify against himself in such actions in respect to any matters involving, or that may involve, his being guilty of a criminal offense. Those cases do not negative the proposition that the court may direct a verdict for the plaintiff in a civil action to recover statutory penalties or forfeitures, if the evidence is "undisputed" that the defendant by his acts incurred the penalty for the offense out of which the civil cause of action arises. That proposition has the support both of reason and authority. Certainly, if the evidence in this case, beyond all dispute, showed that the *plaintiff* was *not* entitled to judgment, then the duty of the court would have been to direct a verdict for the defendant. The general rule on that point is thus stated in *Pleasants* v. *Fant*, 22 Wall. 116, 122: "In the discharge of this duty it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor, that is the business of the jury, but conceding to all the evidence offered the greatest probative force which according to the law of evidence it is fairly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court after a verdict to set it aside and grant a new trial. Must the court go through the idle ceremony in such a case of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that if the jury should find a verdict in favor of plaintiff that verdict would be set aside and a new trial had? Such a proposition is absurd, and accordingly we hold the true principle to be, that if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury." This rule has been often approved by this court, and is steadily

enforced in the courts of the United States. The same rule must obtain as to the duty of the court, when the undisputed testimony shows that the defense is without any foundation upon which to rest, and that the plaintiff is undisputably entitled, upon the facts and as matter of law, to a judgment. In *Herbert* v. *Butler*, 97 U. S. 319, 320. this court, referring to *Improvement Company* v. *Munson*, 14 Wall. 442, and *Pleasants* v. *Fant*, above cited, and speaking by Mr. Justice Bradley, said: "　.　.　.　that although there may be some evidence in favor of a party, yet if it is insufficient to sustain a verdict, so that one based thereon would be set aside, the court is not bound to submit the case to the jury, but may direct them what verdict to render." In *Bowditch* v. *Boston*, 101 U. S. 16, 18, the court said: "It is now a settled rule in the courts of the United States that whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court. Such is the constant practice, and it is a convenient one. It saves time and expense. It gives scientific certainty to the law in its application to the facts and promotes the ends of justice." In *Anderson County Commissioners* v. *Beal*, 113 U. S. 227, 241, the court, referring to *Herbert* v. *Butler*, above cited, and other cases, said: "It is true that, in the above cases, the verdict was directed for the defendant. But where the question, after all the evidence is in, is one entirely of law, a verdict may, at the trial, be directed for the plaintiff, and where the bill of exceptions, as here, sets forth all the evidence in the case, this court, if concurring with the court below in its views on the questions of law presented by the bill of exceptions and the record, will affirm the judgment."

True, the cases just cited were purely civil in their nature, and there is in the present case no bill of exceptions, disclosing the evidence adduced at the trial, but we have something here more specific—a certified question which, in effect, requires the

court to assume, as the basis of any answer to the question, that, according to the undisputed testimony, the Government proved the alleged violation of law. In such a case there are no facts for the jury to consider. Whether, under the undisputed testimony, the plaintiff was entitled to judgment was manifestly only a question of law, in respect of which it was the duty of the jury to follow the direction of the court. Even in technical criminal cases it is the duty of the jury to accept the law as declared by the court. *Sparf and Hansen* v. *United States*, 156 U. S. 51, 101, *and cases there cited.* If in a civil action to recover a penalty the defendant is entitled, the evidence being undisputed, to have a peremptory instruction in his behalf, it is difficult to perceive why the Government is not entitled to a peremptory instruction in its favor, where the undisputed testimony left no facts for the jury to consider, but established, beyond all question and as matter of law, its right to judgment for the prescribed penalty. In *Four Packages* v. *United States*, 97 U. S. 404, 412, which was a proceeding for the forfeiture of goods because of their having been taken from the steamer bringing them into the country, without a permit from the collector, the jury was directed to find a verdict for the Government. 1 Stat. 665; Gen. Reg. (1857) 145. That ruling being assigned for error, this court said: "Taken as a whole, the evidence fully proved that the packages were unladen and delivered without the permit required by the act of Congress; and inasmuch as there was no opposing testimony, the direction of the court to the jury to return a verdict for the plaintiffs was entirely correct"—citing *Improvement Company* v. *Munson*, 14 Wall. 442; *Ryder* v. *Wombwell*, Law Rep. 4 Ex. 39; Law Rep., 2 P. C. 235. In *United States* v. *Thompson*, 41 Fed. Rep. 28, which was an action to recover a penalty of $1,000 under the contract labor law, the court directed a verdict, saying: "There certainly is no question here for the jury, as there is no conflict of testimony. . . . I shall therefore direct a verdict for the Government for the full amount, $1,000." See also *Hines* v. *Darling*, 99 Michigan, 47.

The objection made in behalf of the defendant, that an affirmative answer to the question certified could be used so as to destroy the constitutional right of trial by jury, is without merit and need not be discussed. The defendant was, of course, entitled to have a jury summoned in this case, but that right was subject to the condition, fundamental in the conduct of civil actions, that the court may withdraw a case from the jury and direct a verdict, according to the law if the evidence is uncontradicted and raises only a question of law.

Restricting our decision to civil cases, in which the testimony is undisputed, and without qualifying former decisions requiring the court to send a case to the jury, under proper instructions as to the law, where the evidence is conflicting on any essential point, we answer the question here certified in the affirmative. Let this answer be certified to the court below.

MR. JUSTICE BREWER dissents.