WILLIAM SAWRAN AND FRANKLIN SPANGENBERG, PLAINTIFFS-RESPONDENTS, v. FRANCIS J. LENNON AND MARCO S. BUSNARDO, DEFENDANTS-APPELLANTS.

Argued October 24, 1955—Decided November 21, 1955.

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause for the appellants (*Mr. Grover C. Richman, Jr.,* Attorney-General; *Mr. Saul N. Schechter* and *Mr. Lewis S. Beers* on the brief).

*Mr. John H. Pursel* argued the cause for the respondents (*Mr. Joseph V. DeMasi,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J.   The plaintiffs obtained a judgment in the Warren County District Court directing the defendants to return to them their two hunting rifles which were confiscated by the defendant Busnardo, a fish and game warden, and which are now in the possession of the defendant Lennon, as Sheriff of Warren County.   The defendants appealed to the Appellate Division of the Superior Court and we certified the matter on our own motion while pending there.

On September 15, 1953 the plaintiffs were apprehended by the defendant Busnardo.   At the time of their apprehension the plaintiffs were seated in an automobile that was parked in a field near Oxford, New Jersey.   Lying on the back seat of the car were the two rifles in quesetion—one a Winchester Model 70-270 cal. equipped with a Bausch and Lomb scope,

belonging to the plaintiff Spangenberg; the other, a Remington Model 760-30-06 cal. equipped with a Weaver K-4 scope, belonging to the plaintiff Sawran. The weapons were not loaded, but there was also found in the car a box containing eight 30-06 caliber silver-tipped rifle cartridges, which was ammunition for the rifle owned by Sawran. No ammunition was found for the rifle of Spangenberg.

The warden took the two rifles and requested the plaintiffs to follow him to police headquarters at Washington, New Jersey. After questioning they were taken before the municipal magistrate of the Municipal Court of Independence and Mansfield Townships, where civil complaints were prepared charging each of them with hunting deer out of season, Sawran with the possession of an illegal missile, and Spangenberg with the illegal possession of wild deer.

On September 16, 1953 both plaintiffs signed a statement which set forth that on September 15, 1953 they were target practicing on Sawran's property on the lower end of Buckley Avenue in Oxford, using the weapons in question, and both shot at a doe deer and killed her; that they took the deer to a quarry hole, skinned and butchered her, dropped the remains, hide and head, into the quarry hole and put the carcass into Spangenberg's freezer. Half of the deer, it is said, belonged to Sawran but since he had no place to keep it, Spangenberg stored it in his freezer.

We pause to point out that none of the details of the fortuitous coincidence of a doe deer being on the plaintiff's target range are set forth in their statements; nor are we told how it happened that the plaintiffs were apprehended for their acts after they had butchered and dressed the venison and had stored it in the freezer; nor is there any indication that the plaintiffs were deprived in any way of the benefit of their prize.

Both plaintiffs pleaded guilty to the complaints and were each penalized $200 and costs. The record of the judgments introduced in the trial court shows that Sawran was found guilty by the municipal magistrate of hunting with an illegal missile in violation of *N. J. S. A.* 23:4–44 and also for un-

lawfully hunting for wild deer with firearms out of season under *N. J. S. A.* 23:4–42. The conviction against Spangenberg was for unlawfully having in his possession a wild deer out of season in violation of *N. J. S. A.* 23:4–43 and also for unlawfully hunting for wild deer with firearms out of season under *N. J. S. A.* 23:4–42.

It appears that the warden who seized the two weapons informed the plaintiffs that he would hold the rifles for 15 days and would then return them, but nevertheless he continued to hold the weapons. After about a year had gone by, Spangenberg went to see the chief warden at Hackettstown, who informed him that the two rifles would never be returned and that they had in fact been confiscated and turned over to the sheriff. A written demand was made upon the sheriff for the return of the weapons and his refusal to accede to the demand resulted in this suit.

There are several sections of the Fish and Game Law involved here. *N. J. S. A.* 23:4–42 provides in substance that no person shall hunt for, shoot at, wound or kill a deer except during the period from December 12 to December 16, or during such further period as may be permitted under the Fish and Game Code; *N. J. S. A.* 23:4–43 provides in substance that no person shall have in his possession a wild deer out of the season provided therefor; *N. J. S. A.* 23:4–44 provides that unless otherwise prescribed by the Fish and Game Code, no person engaged in hunting for wild deer shall use or carry a rifle of any kind or description, or any firearms or shotgun of smaller caliber than 12 gauge, or load such firearm or shotgun with a bullet or other missile larger than that commonly known as buckshot; *N. J. S. A.* 23:4–48 provides the penalties for violations of the foregoing sections and states in substance that any person hunting for, pursuing, shooting at, taking, killing, wounding, having in possession in this State, or attempting to perform any of these acts or violating any of the other provisions of this article, "shall be liable to a penalty of one hundred dollars ($100.00) for each offense, and, whether or not he has been

prosecuted for a penalty for the violation, shall be guilty of a misdemeanor."

The section of the statute under which the defendants attempt to justify their confiscation of the weapons of the plaintiffs is not a part of *Title* 23 dealing with fish and game laws, but *N. J. S.* 2*A*:151–16, which provides as follows:

"Property rights in firearms; forfeiture

No property right exists in firearms unlawfully possessed, carried or used, and all such firearms are declared to be nuisances and forfeited to the state. When such forfeited firearms are taken from any person, they shall be surrendered to the sheriff of the county in which taken, or to the head of the police department in municipalities, or to the office of the county prosecutor. If any such firearms are found to be the property of an innocent owner, they shall be returned. to him if and when no longer needed for evidential purposes."

The defendants' contention is that since the plaintiffs pleaded guilty to violating the Fish and Game Laws and used the rifles in perpetrating their offenses, they were, therefore, "unlawfully possessed" of the rifles and they were subject to forfeiture under *N. J. S.* 2*A*:151–16.

The issue before us is, therefore, whether or not the acts committed by the plaintiffs for which they were penalized by the municipal magistrate constitute such unlawful possession, carriage or use of firearms as is contemplated by *N. J. S.* 2*A*:151–16.

The answer to this question depends on whether the statute related to "firearms unlawfully possessed, carried or used," in connection with crimes, or whether it also includes "firearms unlawfully possessed, carried or used" in connection with the many offenses less than crimes known to our law.

There is considerable confusion in our law, both statutory and decisional, as to the nature of the various kinds of public wrongs which fall short of constituting crimes and as to the sanctions by which the law seeks to prevent them, on the one hand, and crimes on the other. Crimes are readily distinguished from all other public offenses by the fact that indictment by a grand jury is a constitutional prerequisite to proceedings to punish the defendants therefor, *Const.*

1947, *Art.* I, *par.* 8, as is trial by jury, *idem. Art.* I, *par.* 9, unless waived by the defendant, but the classes of offenses against the public other than crimes differ markedly from each other. Thus disorderly conduct, *N. J. S.* 2*A* :169–1 to 2*A* :170–96, a class of offenses which has grown extensively over the years, *State v. Maier,* 13 *N. J.* 235 (1953) (especially II, *pp.* 251–260) has always been deemed *quasi*-criminal in nature but not strictly criminal, and is punishable summarily without indictment or trial by jury by *fines* or imprisonment, or both. These offenses find their origin in statutes as above set forth, or in ordinances adopted pursuant to statute, *Paul v. Gloucester,* 50 *N. J. L.* 585 (*E. & A.* 1888) ; *Sherman v. Paterson,* 82 *N. J. L.* 345 (*Sup. Ct.* 1912) ; *Fred v. Mayor and Council, Old Tappan Borough,* 10 *N. J.* 515, 519 (1952) ; 6 *McQuillan, Municipal Corporations* (3rd *.ed.*), *chaps.* 23, 24.

█ Suits for penalties, however, though originating in the same way by statutes, *Wilentz v. Hendrickson,* 133 *N. J. Eq.* 447 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944) ; *cf. St. Louis I. M. & S. R. Co. v. Williams,* 251 *U. S.* 63, 66, 40 *S. Ct.* 71, 64 *L. Ed.* 139 (1919), or in ordinances adopted pursuant to appropriate statutes, *Johnson v. Barclay,* 16 *N. J. L.* 1 (*Sup. Ct.* 1837) ; *Brophy v. Perth Amboy,* 44 *N. J. L.* 217 (*E. & A.* 1882), are neither criminal nor *quasi*-criminal in nature but civil. Such offenses are punishable, as the name implies, by *penalties, Johnson v. Barclay, supra;* *Minard v. Dover,* 76 *N. J. L.* 132 (*Sup. Ct.* 1908) ; *State v. Lakewood Market Co.,* 84 *N. J. L.* 512 (*Sup. Ct.* 1913) ; *State Board of Med. Ex. v. Curtis,* 94 *N. J. L.* 324 (*Sup. Ct.* 1920) (but not, as in cases of disorderly conduct, by fines) and in appropriate cases by corporal imprisonment, *R. R.* 7 :13–11; *R. R.* 7 :13–14(*c*). Penalty actions, moreover, unlike fines in criminal cases and in proceedings against disorderly persons, may involve sanctions which may enure to the benefit of private individuals, such as *qui tam* action, see *Clark v. Collins,* 15 *N. J. L.* 473 (*Sup. Ct.* 1836) ; *Brophy v. Perth Amboy,* 44 *N. J. L.* 217 (*E. & A.* 1882) ; *Koch v. Vanderhoof,* 49 *N. J. L.* 619 (*Sup. Ct.* 1887). The

clear purpose both of *quasi*-criminal proceedings against disorderly persons and civil suits for penalties is to provide a summary action for the disposition of minor offenses free from indictment and trial by jury in cases not deemed sufficiently important to call for indictment and trial by jury, which methods if applied to a vast number of cases would inevitably clog the courts.

■ Suits for penalties, moreover, must always be construed strictly according to their clear intendment, *State v. Meinken*, 10 *N. J.* 348, 352 (1952); *Mayor & Council of Alpine Borough v. Brewster*, 7 *N. J.* 42, 51, 52 (1951). See also Wharton, *Criminal Law* (*12th ed.*), § 40, where it is noted that:

"In construing such statutes, however, we are to look for their reasonable sense, and if this is clearly ascertained it must be applied, though a narrower sense is possible. The courts are, on the one hand, to refuse to 'extend the punishment to cases which are not clearly embraced' in the statutes; on the other hand, to refuse, 'by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope.' At the same time, in matters of reasonable doubt, this doubt is to tell in favor of liberty and life."

With these distinctions in mind, is *N. J. S.* 2*A*:151–16, *supra*, to be applied in penalty proceedings, or is it to be confined solely to cases involving crimes?

This forfeiture statute was originally passed in 1927 (*L.* 1927, *c.* 321, § 16, *p.* 749) as "A Further Supplement to an act entitled 'An act for the punishment of Crimes' (Revision of 1898) [*L.* 1898, *c.* 235, *p.* 794] approved June fourteenth, one thousand eight hundred and ninety-eight." In the *Revised Statutes* of 1937 it appeared in *Title 2* under the subtitle headed "Administration of Criminal Justice" (*R. S.* 2:176–16). In the existing revision of *Title 2A* it appears under *subtitle* 10, entitled "Crimes," of *Title 2A* which covers the "Administration of Civil and Criminal Justice" (*N. J. S.* 2*A*:151–16).

■ The origin of this section convinces us that the Legislature never intended by the phrase "unlawfully possessed,

carried or used" to include any acts short of those which constituted crimes. The design of the 1927 act (*L.* 1927, *c.* 321) was generally to regulate the possession and use of firearms, weapons such as blackjacks, brass knuckles, bludgeons, knives and the like and explosives. It provided for an additional prison term of a minimum of five years for the use or possession of such weapons in the commission of the crimes of assault, robbery, larceny, burglary and breaking and entering; it declared illegal possession of weapons, that is, possession without a permit where one was required or which under the act had been declared itself to be a misdemeanor, during the commission of any of the crimes listed, to be *prima facie* evidence of intent to commit a crime of violence; it required the registration of manufacturers of and dealers in firearms or weapons and the keeping by them of detailed records of all sales of such items; it required, with certain exceptions, that a person who desired to carry a pistol or revolver or firearms concealed in his possession had to obtain a permit; and it expressly excepted from the permit requirements, among others, guns and rifles carried for the purpose of hunting or target practice. These sections (1–20, *c.* 321, *L.* 1927) are still effective, notwithstanding the intervening statutory revisions, in substantially the same form as enacted in *N. J. S.* 2*A*:151–1 *et seq.* and the punishment provided for violations of their terms are in all cases misdemeanors or high misdemeanors. It is thus apparent that in providing for a forfeiture of firearms by reason of their unlawful possession, carriage or use, the Legislature intended to cover only criminally unlawful acts, and not acts which were less than criminal or which carried only pecuniary penalties.

The proceedings before the municipal magistrate were brought pursuant to the direction of *N. J. S. A.* 23:10–2 which provides that the penalties prescribed for violations of the Fish and Game Law may be enforced and recovered in a summary manner in accordance with the Penalty Enforcement Law (*N. J. S.* 2*A*:58–1 *et seq.*). The action there provided for is described as a "civil" action for the recovery of any penalty imposed by any statute which by direction

or authority permits collection or enforcement in a summary manner or by way of summary proceedings and according to the rules of the Supreme Court. Jurisdiction of these actions is conferred upon the municipal courts by virtue of *N. J. S.* 2*A* :58–2 and *N. J. S.* 2*A* :8–21. These actions are consistently described in the *Revised Rules* governing the courts of New Jersey as part of our "Civil Practice" (*R. R.* 4:89) and as "summary civil proceeding" (*R. R.* 5 :2–6; *R. R.* 7 :13 and *R. R.* 7 :14). In *R. R.* 7 :13–1 we find the following provision:

"Any penalty imposed by any statute, which may be collected or enforced by a summary civil proceeding shall be collected and enforced pursuant to this rule, and the procedure therein in every county district court, county court or other court upon which jurisdiction is conferred by the statute imposing the penalty, shall be in accordance with this rule. But where under any statute a civil penalty is to be collected by a civil action, the action shall not be brought pursuant to this rule."

By great weight of authority actions for the collection or enforcement of a penalty only have been held to be civil proceedings. *Clark v. Collins,* 15 *N. J. L.* 473 (*Sup. Ct.* 1836); *Pennsylvania Railroad v. N. J. Society, etc.,* 39 *N. J. L.* 400 (*Sup. Ct.* 1877); *Brophy v. Perth Amboy,* 44 *N. J. L.* 217 (*E. & A.* 1882); *Campbell v. Board of Pharmacy,* 45 *N. J. L.* 241 (*Sup. Ct.* 1883); *Koch v. Vanderhoof,* 49 *N. J. L.* 619 (*Sup. Ct.* 1887); *Tims v. Spragg,* 58 *N. J. L.* 273 (*Sup. Ct.* 1895); *Minard v. Dover, etc.,* 76 *N. J. L.* 132 (*Sup. Ct.* 1908); *New Jersey Soc. for Prevention Cruelty to Animals v. Atkinson,* 76 *N. J. L.* 286, 287 (*Sup. Ct.* 1908); *New Jersey Soc. for Prevention of Cruelty to Animals v. Russ,* 83 *N. J. L.* 450 (*E. & A.* 1912); *State v. Lakewood Market Co.,* 84 *N. J. L.* 512 (*Sup. Ct.* 1913); *State Board v. Curtis,* 94 *N. J. L.* 324 (*Sup. Ct.* 1920), affirmed 95 *N. J. L.* 551 (*E. & A.* 1920); *Zuest v. Ingra,* 134 *N. J. L.* 15 (*E. & A.* 1945). See also *Stout v. State ex rel. Caldwell, supra; Hepner v. United States,* 213 *U. S.* 103, 29 *S. Ct.* 474, 53 *L. Ed.* 720, and the cases collected in

27 *L. R. A.* (*N. S.*) 739. The distinction is that they are enforced, not by a criminal imprisonment, but through a civil action which is rarely used for this purpose (for an illustration of its use see *N. J. S. A.* 4:22–26, last paragraph) or through the above mentioned hybrid summary civil proceeding which starts with a complaint (resembling a criminal complaint, *R. R.* 7:13–2) and ends with a judgment of conviction (*R. R.* 7:13–10)—see Forms 11, 12 and 13 of County District Court Forms attached to the rules. Both are nevertheless civil in nature and involve execution against the goods and chattels of the defendant (and also his lands if the judgment is in the county court)—or against the body of the defendant on a civil *capias* if the court specially orders, *N. J. S.* 2A:58–4; *R. R.* 7:13–14. This line of authority showing unquestionably the civil nature of a penalty provision clearly excludes any possible implication of a forfeiture resulting from a criminal act.

█ The plaintiffs were held liable only for the penalty part of the punishment prescribed for the violations of *N. J. S. A.* 23:4–48 and, therefore, not prosecuted for or convicted of any crime.

Having come to this conclusion we need make no determination as to the applicability of *N. J. S.* 2A:151–16, in a case where the act committed in violation of the Fish and Game Law does amount to a crime, and conviction for the misdemeanor provided for therein is obtained. The resolution of that issue is left to a case in which it is properly presented. But in passing, we note that in *Title* 23 the Legislature has seen fit to provide specifically for the forfeiture of many types of articles unlawfully used in the pursuit of fish and game (*N. J. S. A.* 23:9–44, 23:10–21, 23:10–21.1), but has omitted any provision for the forfeiture of weapons or firearms unlawfully used where the prohibited act carries a criminal penalty. Compare *N. J. S. A.* 23:4–31, where provision is made for the forfeiture of all guns found in the possession of unnaturalized foreign-born persons except as may be necessary in the defense of person or property, and where only a pecuniary penalty is provided for.

The conclusion reached further makes it unnecessary for us to consider whether the forfeiture statute, *N. J. S.* 2A:151–16, is unenforceable for want of procedural due process, but we note that by *R. R.* 7:14 it is provided that "in any proceeding for the confiscation or forfeiture of a chattel, the procedure shall be as nearly as may be, like that provided by Rule 7:13 for the collection of statutory penalties." No such proceedings were taken with respect to the forfeiture of the rifles here involved; no mention was made in the complaints against the plaintiffs of any forfeiture (*cf. R. R.* 7:13–2); no process specifying the provisions of the statute relied upon to sustain the forfeiture was issued against the plaintiffs (*cf. R. R.* 7:13–3 to 6); and no hearing was had (*cf. R. R.* 7:13–7 to 9) and no judgment rendered with respect to the forfeiture of the rifles (*cf. R. R.* 7:13–10).

Accordingly, judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.