**UNITED STATES of America,**
**Appellee,**

v.

**Charles MacMULLEN, Appellant.**

**Nos. 24, 25, Dockets 25088, 25089.**

United States Court of Appeals
Second Circuit.

Argued Oct. 16, 1958.

Decided Dec. 29, 1958.

Paul Reed Taylor, Penn Yan, N. Y., for appellant.

Neil Brooks, J. Stephen Doyle, Jr., Attys., U. S. Dept. of Justice, Donald A. Campbell, Atty., U. S. Dept. of Agriculture, Washington, D. C., for appellee.

Before HAND, HINCKS and WATERMAN, Circuit Judges.

500

PER CURIAM.

The judgments appealed from were summarily granted in two actions demanding penalties from the defendant under § 1340(2) of Title 7 U.S.C.A. based upon his "farm marketing excesses" of wheat for the years 1954 and 1955 upon his farm in Seneca County, New York. The complaints were alike and alleged that for each of these years the Seneca County Agricultural Stabilization and Conservation Committee had determined a "farm marketing excess of wheat" on the defendant's farm, and had given him notice of the facts on which it had computed the excess; and that the defendant had neither applied to the committee for any adjustment of the "excess," nor to a "review committee" under § 1363 for any change in his quota, or "excess." The complaints also alleged what was the "parity price" of wheat under § 1340(2) for those years and prayed judgment for the penalty provided in that section. The defendant answered, demanding a jury trial, denying all the allegations of the complaints and adding as an "affirmative defense and counterclaim," that the Agricultural Adjustment Act of 1938 and the regulations promulgated under it were "unconstitutional" for seven reasons that need not be specified.

On the plaintiff's motions for summary judgment, it filed certified copies of documents setting forth the proceedings of the Seneca County Agricultural Stabilization and Conservation Committee, copies of letters addressed to the defendant giving notice of the imposition of the penalty and "Reports" of the "Manager" of the Committee to the State Committee, which are irrelevant for purposes of this appeal. The defendant filed no answering papers on the motions.

█ The first question raised is whether these actions are within Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A., and may be disposed of by summary judgment. The Sixth and Seventh Circuits have expressly so de-, cided. Miller v. United States, 242 F.2d 392; United States v. Stangland, 242 F. 2d 843. See also Usher v. United States, 4 Cir., 146 F.2d 369. We should in any event hesitate to differ from these decisions, even if it had not been decided under other statutes that similar penalties may be treated as civil liabilities if Congress so intends. Hepner v. United States, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720; Chicago, Burlington & Quincy Railway Co. v. United States, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582.[1] In the cases at bar it seems to us clear that Congress must at least have meant that a proceeding to collect the penalty might be regarded as a civil action. Section 1367 provides that the decision of the "review committee" may itself be reviewed only as provided in §§ 1361–1368, and § 1365 provides for such a review by "a bill in equity." Moreover, § 1363 provides that "Unless application for review is made within such period,"—that is by application made within fifteen days,—"the original determination of the farm marketing quota shall be final." It would certainly be a hybrid procedure to make the determination of the "quota" exclusively civil, but the collection of the penalty based upon it exclusively criminal. It need scarcely be said that a general denial, standing by itself, does not prevent a summary judgment for the plaintiff. Thomas v. Mutual Benefit Health & Accident Association, 2 Cir., 220 F.2d 17.

█ The defendant raises two questions as to the constitutionality of the Act on which the Supreme Court did not pass in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122. The first arises under § 1336 of Title 7 which provides for a referendum to decide whether there shall be a "national marketing quota for wheat." This is to be taken between date of the issuance by the Secretary of Agriculture of the proclamation provided in § 1335(a) (2) and July 25. Under § 1336 it is to be by "secret ballot, of farmers who will be subject to the quota specified" in the

1. Both cases turned upon the court's authority to direct a verdict.

proclamation. Section 1340(7) provides that "a farm marketing quota on * * wheat shall not be applicable to any farm on which the acreage planted to the commodity is not in excess of fifteen acres." If the defendant had wished to vote on the referendum he should have made it known that he had planted, or intended to plant, more than fifteen acres, and have demanded a right to vote. He does not suggest that he tried to make any such purpose known, or that he was unable to claim the right, although in both years he planted more than fifteen acres. Since all those had the suffrage who were to be affected by the law, there was no need, and indeed no propriety, in consulting others.

█ The second constitutional objection is that by regulation (March 18, 1954, 19 Fed.Reg. 1481) the "farm marketing excess" is to be determined by the wheat "growing" on June 15, without adjusting the penalty in cases where a part, or all, of such wheat is never harvested. We cannot find any such regulation; but, even if there were one, § 1340(12) provides that "the farm marketing excess for any crop of wheat for any farm shall not be larger than the amount by which the actual production of such crop of wheat on the farm exceeds the normal production of the farm wheat-acreage allotment, if the producer establishes such actual production to the satisfaction of the Secretary. Where a downward adjustment in the amount of the farm marketing excess is made pursuant to the provisions of this paragraph, the difference between the amount of the penalty or storage as computed upon the farm marketing excess before such adjustment and as computed upon the adjusted farm marketing excess shall be returned to or allowed the producer." This enables a farmer, on whose farm there is "growing" on June 15 more wheat than has been threshed, to obtain a reduction of his liability and it is an answer to the defendant's second point not dealt with in Wickard v. Filburn, supra.

Judgments affirmed.