STATE of South Dakota, Plaintiff
and Respondent,

v.

WESTERN CAPITAL CORPORATION,
Defendant and Appellant.

No. 12618.

Supreme Court of South Dakota.

Argued Sept. 12, 1979.

Decided March 26, 1980.

Kevin F. Manson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Western Capital Corporation, appellant, appeals from a judgment of the circuit court ordering appellant to refund the sum of $23,900 in restitution for the down payment on eleven contracts entered into with South Dakota consumers, and from the same judgment, requiring appellant to pay to the State of South Dakota $22,000 in civil penalties for engaging in deceptive trade practices. The trial court also entered a permanent injunction enjoining appellant from transacting business within the state unless it was in full compliance with Chapter 37–24: The Deceptive Trade Practices and Consumer Protection Law. We affirm.

## FACTS

Appellant is known as Western Capital Corporation. It is a Kansas corporation with its principal place of business in Omaha, Nebraska, and is engaged in business as a loan broker. Appellant prepares and packages loan applications for customers, and then seeks out prospective lenders who may be willing to lend money to these customers. A fee is exacted for these services. It is evident from the record that appellant had salespeople in South Dakota, advertised extensively through South Dakota newspapers and radio stations, and mailed contracts into the state.

Western Capital entered into fifty contracts with South Dakota customers. Out of these fifty customers, only two ever received loans. Material to this appeal are thirteen of these contracts. Of the thirteen consumers who contracted with and paid Western Capital, not one obtained the loan for which he bargained. Only six of the thirteen ever obtained loan commitments, but none of these were on the terms and conditions bargained for or represented by appellant's salesmen.

Agents of Western Capital, in inducing South Dakota consumers to purchase its services, represented that it could secure long-term financing in the area of fifteen to twenty-five years. However, at the time these representations were made, appellant was aware that the length of the loans and the loan commitments that were actually being offered through lending institutions were ten-year amortized loans with five-year calls. Appellant withheld this information. This type of loan was totally unacceptable, especially in the agricultural area. In addition, appellant misrepresented to each customer the likelihood of securing a loan under the terms and conditions represented by its salesmen, and the likelihood that such loans would be offered in a relatively short period of time. Furthermore, appellant led customers into believing that other than its fees and interest charged by the lender, no other costs would be incurred. In reality, however, other substantial costs and escrow fees were charged.

Aside from these misrepresentations, appellant also failed to comply with the statutory requirements contained in Chapter 37–24. At all times during its negotiations with these thirteen and the other customers who entered into contracts, appellant was in violation of SDCL 37–24–5.3 and SDCL 37–24–5.4. Furthermore, appellant refused to refund the service fee in the event of cancellation.

During the trial, the court permitted appellant to introduce evidence of its claimed expenses in preparing each customer's loan package. The testimony was offered for the express purpose of determining whether appellant was entitled to any setoff against the money which it had already received from each customer. The trial court received this offered testimony under the condition that appellant "would be required to show it made a bona fide effort to obtain loans under the terms discussed with each customer and to substantiate any claimed expenses with each customer." This testimony was presented in the form of "summaries" which were prepared by appellant expressly for litigation, and not in the ordinary course of business. The trial court denied appellant any setoffs and ordered that each customer be fully refunded on the basis that the summaries were of "doubtful accuracy," were speculative in nature, and that such costs were incurred in furtherance of a deceptive trade practice.

## ISSUES

### I.

Did the trial court err in concluding that appellant committed a deceptive trade practice with regard to each of the contracts in question?. We hold that it did not.

### II.

Did the trial court err in ruling that it had proper jurisdiction over two contracts which were negotiated outside the state? We hold that it did not.  •

### III.

Did the trial court err in ordering appellant to refund all of the advance fees received on the contracts in question, and in refusing to give appellant credit for amounts expended in efforts to procure financing for customers? We hold that it did not.

### IV.

Did the trial court err in awarding civil penalties under SDCL 37–24–27, notwithstanding appellant's allegation that the statute is criminal in nature, thereby rendering such penalties void and unlawful? We hold that the penalties imposed are civil in nature and that the court committed no error.

## DECISION

### I.

#### A.

Appellant admits that the contracts in question, all identical in form, were not in strict conformance with the precise terms of SDCL 37–24–5.3 and SDCL 37–24–5.4. It contends, however, that because each contained a cancellation provision, and was therefore in substantial compliance with these statutes, the court erred in finding it guilty of deceptive trade practices. Appellant refers to paragraph G that appeared at the bottom of each of the form contracts which reads: "CLIENT has the right to cancel this AGREEMENT within three calendar days. CLIENT also acknowledges receipt of a copy of this AGREEMENT."

SDCL 37–24–5.3 provides that the buyer be furnished with a receipt or a copy of any contract which, in addition to other information, must include "in boldface type of a minimum size of ten points," a statement that must substantially conform to the cancellation provision appearing therein. Here, the cancellation provision contained in paragraph G was not set out in boldface type. In addition, the word "cancel" was not capitalized or in any way accentuated to call attention to the nature of its content.

On the other hand, the words "client" and "agreement" were consistently capitalized, lending the impression that the agreement was binding. The fact that the statute provides for boldface, ten-point type evidences an intent that the notice contain a certain emphasis or prominence. Furthermore, appellant did not provide a separate notice of cancellation form which must contain a provision notifying customers of their right to recover any advance payments in the event of cancellation, as required by SDCL 37–24–5.4. To the contrary, and in blatant derogation of the statute, paragraph D of appellant's contract states that "the parties mutually agree as follows: CORRESPONDENT be paid a *non refundable* service fee of $_____ for the preparation of a loan packet . . ." (emphasis added).

Accordingly, we hold that the court's finding is not clearly erroneous, and therefore will not be set aside. SDCL 15–6–52(a); *In Re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

### B.

■ Appellant also maintains that the court's findings that its agents or employees made other misrepresentations and failed to disclose material facts in its negotiations are not supported by competent, credible evidence and are clearly erroneous. Appellant contends that most of the customers were apprised of the nature of the loan arrangements and that additional points could be charged by lending institutions. Appellant further asserts that each customer realized Western Capital was not a lending source, and that its task was simply one of presenting and packaging loan applications to prospective lending institutions on the terms discussed.

We have reviewed the record and find that appellant has failed to show that the evidence clearly preponderates against the findings. *Cunningham v. Yankton Clinic*, 262 N.W.2d 508 (S.D.1978). The record is replete with evidence of misrepresentations made to each customer: (1) Appellant misrepresented the likelihood of securing loans and loan commitments. Western Capital had only obtained loans for two out of fifty of its South Dakota customers, and neither of them were under the terms discussed; (2) Appellant was aware that long-term financing (fifteen to twenty-five years) could not be obtained, yet these were the terms under which the contracts were negotiated; (3) Appellant represented that these loan proceeds would be coming forth promptly; (4) Although paragraph D in each contract states, in part, "CORRESPONDENT'S fee in no way is applicable to or connected with any fee charged by lender," appellant nonetheless implied that other than its fees and interest charges of the lender, no other costs were involved in obtaining a loan. These undisclosed costs, by way of points or escrow fees, in some instances, would have amounted to tens of thousands of dollars. Therefore, in light of this evidence, we cannot say that the trial court's findings are clearly erroneous.

### II.

■ Appellant argues secondly that because two of the contracts in question, the Lindeman and Siebrasse contracts, were executed and negotiated in Omaha, Nebraska, South Dakota lacks jurisdiction.

Mr. Lindeman had seen Western Capital's ads in two South Dakota newspapers and a Kansas newspaper. He called the toll-free number listed in the advertisement from South Dakota to set up a meeting with appellant's representatives in Omaha. He drove there on November 2, 1976; however, at that time no written contract was entered into. Lindeman wrote appellant a check for $2,500 in Omaha, but the contract was not mailed to him until sometime in January of 1977, where he later signed it in South Dakota.

Mr. Siebrasse responded to appellant's ad which appeared in a South Dakota newspaper. Although he signed the contract in Omaha, it was the ad appearing in the South Dakota newspaper that prompted his action.

Appellant's reliance on *Kulm v. Idaho First National Bank*, 428 F.2d 616 (8th Cir.

1970), is misplaced. There the court stated that the sending and receipt of one letter did not constitute a minimum contact. The court found that the investments that were made by the South Dakota resident were not induced by the letter, since the investments were made prior in time to the receipt of said letter. In *Kulm*, the pleadings and affidavits made no allegation that any of the defendants were ever in the State of South Dakota, and that the telephone calls between the bank and Kulm were not alleged to have been made to the Kulms in South Dakota, a factor which would bear strongly on whether the minimum contact existed. It is evident that Western Capital had a number of salespeople in South Dakota, advertised extensively in South Dakota newspapers and on South Dakota radio, and mailed contracts and loan commitments into the State of South Dakota. SDCL 15–7–2 provides: "Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, or through an agent, . . . (1) The transaction of any business within the state; [or] . . . (5) Entering into a contract for services to be rendered or for materials to be furnished in this state by such person. . . ." Therefore, appellant's contacts within the State of South Dakota meet the requisite minimum contacts for this state to assume jurisdiction, and accordingly, the trial court did not err.

### III.

Appellant asserts that the court erred in ordering it to refund all the advance fees received with respect to the contracts in question, and in refusing to give appellant credit for amounts expended in efforts to procure financing for customers. The court ordered appellant to refund the sum of $23,900 in restitution for the downpayment it received on eleven contracts pursuant to SDCL 37–24–29. This statute, which allows the court to make such additional orders "as may be necessary to restore to any person in interest any moneys . . . the court finds to have been acquired by means of any act or practice declared to be unlawful by Section 37–24–6," makes no provision for a setoff against money expended in the furtherance of deceptive trade practice violations.

The trial court refused to allow any setoff for expenses due the speculative and "doubtful accuracy" of the testimony presented in the form of "summaries," representing the work detail for each customer's account. Agents of appellant testified at trial that these summaries were not prepared in the normal course of business; rather, they were prepared for the express purpose of litigation. No time sheets were kept by the employees; appellant's agents admitted that the amount appearing on the summaries were only estimates. Furthermore, the court found that the expenditures were not expended in efforts to obtain loans at the terms or costs requested by or represented to the customers.

Accordingly, we hold that the court did not abuse its discretion in denying appellant any setoff for the expenses incurred.

### IV.

Appellant also asserts that the trial court erred in awarding civil penalties of $22,000 to the state under SDCL 37–24–27 for appellant's intentional use of deceptive trade practices. Appellant premises its contention upon the ground that the penalties imposed under the statute, although denominated civil by the statute itself, are in reality fines and punitive in nature. Accordingly, appellant asserts that it should have received all constitutional and statutory protections afforded any criminal defendant. Thus, the question for decision is whether SDCL 37–24–27 imposes a criminal sanction.

The distinction between civil proceedings that are purely remedial and those that impose a punishment for criminal conduct has not been specifically enunciated by the United States Supreme Court. Part of the reason for this blurred distinction is that "[i]n determining whether particular rules of criminal procedure are applicable to civil actions to enforce sanctions, the cases have

usually attempted to distinguish between the type of procedural rule involved rather than the kind of sanction being enforced." *Helvering v. Mitchell*, 303 U.S. 391, 400 n. 3, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938). As a result, the Court has refused in recent years to apply either the double jeopardy clause or the criminal trial guarantees of the Sixth Amendment to forfeitures and money penalties labeled "civil" by statute. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam) (forfeiture); *Rex Trailer Co. v. United States*, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) (money penalty); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (money penalty); *Helvering v. Mitchell*, supra (money penalty); *Lloyd Sabaudo Societa v. Elting*, 287 U.S. 329, 53 S.Ct. 167, 77 L.Ed. 341 (1932) (civil money penalty may be assessed before administrative official rather than a court); *Hepner v. United States*, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909) (government need not prove its case beyond a reasonable doubt in a money penalty case); and *United States v. Zucker*, 161 U.S. 475, 16 S.Ct. 641, 40 L.Ed. 777 (1896) (no Sixth Amendment right of confrontation in forfeiture proceeding).

On the other hand, the Court has held the Fourth Amendment's protection against unlawful search and seizure and the Fifth Amendment's protection against compelled testimony is applicable to forfeitures based on criminal conduct. *See United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); and *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). It must be noted, however, that if a statute is interpreted as primarily remedial in nature, these protections do not apply. *Helvering v. Mitchell*, supra.

The question often becomes one of statutory construction. In *Boyd v. United States*, supra, the Court pointed out that the defendant was prosecuted under a statute which contained both civil and criminal sanctions—loss of liberty, fine, and forfeiture of the goods. It was held that the government could not, by seeking only the forfeiture in lieu of other criminal sanctions, convert a criminal trial into a civil proceeding. Conversely, in subsequent decisions of the Court, the fact that particular acts contained two separate and distinct provisions imposing sanctions which appeared in different parts of the statute has been considered relevant in determining the character of such sanction. *One Lot Emerald Cut Stones*, supra; *Rex Trailer Co.*, supra; and *Helvering v. Mitchell*, supra. The Court, in construing the provisions of the Revenue Act of 1928 in *Helvering* noted:

> The sanction of fine and imprisonment prescribed by § 146(b) . . . for willful attempts "in any manner to evade or defeat any [income] tax," introduced into the Act under the heading "Penalties," is obviously a criminal one. The sanction of 50 per centum addition "if any part of any deficiency is due to fraud with intent to evade tax," prescribed by § 293(b), introduced into the act under the heading "Additions to the Tax," was clearly intended as a civil one . . . Obviously all of these "Additions to the Tax" were intended by Congress as civil incidents of the assessment and collection of the income tax.

303 U.S. at 404–405, 58 S.Ct. at 636, 82 L.Ed. at 925.

Similarly, in *One Lot Emerald Cut Stones*, the Court, in holding that the forfeiture statute was a civil penalty, discussed at length the statutory relationship between the smuggling and forfeiture statutes and stated:

> The fact that the sanctions were separate and distinct and were contained in different parts of the statutory scheme is relevant in determining the character of the forfeiture. Congress could and did order both civil and criminal sanctions, clearly distinguishing them. There is no reason for frustrating that design. [citing *Helvering v. Mitchell*, supra.]

409 U.S. at 236–237, 93 S.Ct. at 493, 34 L.Ed.2d at 443. Accordingly, these sanctions have been upheld notwithstanding their comparative severity and the contention that they are essentially punitive in nature.

Contained within Chapter 37–24 are separate and distinct provisions imposing sanctions for one engaging in a deceptive trade practice. SDCL 37–24–6 provides: "It is a Class 2 misdemeanor for any person to use any deceptive act or practice in the conduct of his business within this state." Since the statute explicitly imposes the sanction of a Class 2 misdemeanor which subjects one to thirty days imprisonment in a county jail or one hundred dollars fine, or both (SDCL 22–6–2(2)), it is clearly criminal in nature. SDCL 37–24–27, on the other hand, specifically states that "the attorney general, upon petition to the court, may recover, on behalf of the state, a *civil penalty* of not more than two thousand dollars per violation." (emphasis added). This statute is clearly remedial in nature. It is separable and distinct from SDCL 37–24–6; it is statutorily labeled a "civil penalty;" and it is premised upon the state bringing an action for injunction, pursuant to SDCL 37–24–23, which is a civil proceeding. Therefore, having construed the penalties imposed under SDCL 37–24–27 civil in nature, appellant is not entitled to the constitutional and statutory protections governing criminal prosecutions. *See Helvering v. Mitchell.*

Appellant argues, however, that since there are no guidelines or parameters on which the penalty must be based, and that the $2,000 per violation is not directly related to any harm or damage suffered by the state, it is in the nature of a fine, rather than a measure of civil damages. A somewhat similar argument was addressed in *Rex Trailer Co.*, supra, where the government brought an action to recover $2,000 on each of five counts under § 26(b)(1) of the Surplus Property Act of 1944. The United States Supreme Court held that the failure of the government to allege specific damages did not preclude recovery. The Court went on to say:

[T]here is no requirement, statutory or judicial, that specific damages be shown, and this was recognized by the Court in *Marcus.* The Government's recovery here is comparable to the recovery under the liquidated-damage provisions which fix compensation for anticipated loss. . . . And the fact that no damages are shown is not fatal. Section 26(b)(1) merely accomplishes the intended result of Congress by authorizing a separate proceeding for the recovery of a lump sum in damages.

350 U.S. at 152, 153, 76 S.Ct. at 222, 100 L.Ed. at 155.

We likewise hold that SDCL 37–24–27 merely accomplishes the intended result of the legislature by authorizing the State to institute a separate proceeding for the recovery of a lump sum of damages for the costs incurred in bringing an action to enjoin the use of a deceptive trade practice. Furthermore, it is not necessary that the State show actual damage suffered in order to recover under the section.

Accordingly, the judgment is affirmed in its entirety.

All Justices concur.