**The HERALD COMPANY, a Corporation, d/b/a Globe-Democrat Publishing Company, Appellant,**

**v.**

**Roy W. HARPER, Presiding Judge, James H. Meredith and John K. Regan, Associate Judges, Appellees.**

No. 19570.

United States Court of Appeals Eighth Circuit.

April 21, 1969.

------

Lon Hocker, of Hocker, Goodwin & MacGreevy, St. Louis, Mo., for appellant; Tobias J. Berman, of Sabin, Berman & Blau, New York City, and G. D. Bauman, St. Louis, Mo., with him on the briefs.

Gray L. Dorsey, Chesterfield, Mo., for intervenor-appellee.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MATTHES, Circuit Judge.

This suit, as the caption shows, was filed by the Herald Company, d/b/a Globe-Democrat Publishing Company, against three judges of the United States District Court for the Eastern District of Missouri. The complaint alleged in substance that 15 U.S.C. § 15, providing for recovery of treble damages for violation of the antitrust laws, is unconstitutional and prayed for an injunction to prevent the defendant judges from complying with the mandate of this court of May 16, 1968, issued pursuant to the mandate of the Supreme Court in Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). Embodied in the complaint was a request that a three-judge court be convened to determine the merits of the constitutional issue. The district court, Honorable Richard M. Duncan, dismissed the complaint for want of a substantial constitutional question. The Herald Co. v. Harper, 293 F.Supp. 1101 (E.D.Mo. 1968). Herald has appealed from the judgment of dismissal.

In reality, this is another chapter in the litigation between Lester J. Albrecht and Herald. A resume of the proceedings prior to this appeal hopefully will prove instructive.

Albrecht sued the Herald Company on August 12, 1964, for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, for violation of the Sherman Act, 15 U.S.C. § 1. The jury found for the defendant. We affirmed the judgment entered on the verdict. 367 F.2d 517 (8th Cir. 1966). The Supreme Court granted Albrecht's petition for certiorari on February 27, 1967. 386 U.S. 941, 87 S.Ct. 976, 17 L.Ed.2d 872.

On July 3, 1967, Herald filed its motion to dismiss the writ of certiorari for want of jurisdiction. In this motion Herald, for the first time, asserted that 15 U.S.C. § 15 "as it is sought to be applied in this case, and on its face, is unconstitutional under the following provisions of the United States Constitution." Sections 1, 2 and 3 of Article 2, the Fourth Amendment, clauses 2, 3 and 4 of the Fifth Amendment, the Sixth Amendment, a part of the Seventh and a part of the Eighth Amendments, were quoted and relied upon by Herald in seeking to convince the Supreme Court that the Act was unconstitutional. Albrecht opposed the motion to dismiss. On October 9, 1967, the Supreme Court entered an order reciting "[f]urther consideration of motion * * * to dismiss writ of certiorari postponed to hearing of case on the merits." 389 U.S. 805, 88 S.Ct. 28, 19 L.Ed.2d 59. Herald's motion to transfer the case from the summary calendar to the regular calendar, filed October 14, 1967, was denied on October 23. 389 U.S. 910, 88 S.Ct. 230, 19 L.Ed.2d 257. In that motion, it was alleged that "the ques-

tions raised in the motion [to dismiss] are of vast importance not only to present an inevitable future litigation, but to fundamental concepts of government under the United States Constitution."

On March 4, 1968, the Supreme Court, Justices Harlan and Stewart dissenting, decided the case on the merits and held in pertinent part that the uncontroverted facts showed a combination within § 1 of the Sherman Act and thus it was error to affirm the judgment of the district court which denied petitioner's motion for judgment notwithstanding the verdict. The case was remanded to this court for further proceedings consistent with the opinion. 390 U.S. 145, 88 S.Ct. 869. The constitutional issue which had been raised in the motion to dismiss was not discussed in the majority or dissenting opinions.

Herald's subsequent petition for rehearing vociferously complained of the court's failure to pass upon and dispose of the motion to dismiss the writ. The concluding paragraphs of the motion stated:

> "This Court has exercised jurisdiction, inadvertently, we feel, in the face of an as yet undisposed-of challenge thereof on multiple constitutional grounds.

> "A rehearing should be ordered so that the constitutional claims of respondent may be considered and determined."

On April 8, 1968, the Court entered this order:

> "Motion to dismiss writ of certiorari denied. Petition for rehearing denied." 390 U.S. at 1018, 88 S.Ct. 1258, 20 L.Ed.2d 169.

After the case had been remanded by this court to the district court for further consideration, Herald on June 7, 1968, filed the present action in the United States District Court for the Eastern District of Missouri.

The case was transferred to the Honorable Richard M. Duncan, United States District Judge for the Eastern and Western Districts of Missouri. Thereafter, Albrecht, who had been permitted to intervene, filed a motion to dismiss on the grounds: (1) the question of the constitutionality of the statute was ruled on by the Supreme Court and (2) no substantial constitutional question was presented requiring the convening of a three-judge court.

Herald contends that since the complaint specifically alleges that the Act in question is unconstitutional, a decision on the merits by a three-judge court is required.[1] Albrecht, on the basis of the proceedings in the Supreme Court above reviewed, presents three contentions: (1) The doctrine of res judicata applies. (2) If the action of the Supreme Court did not serve to adjudicate the constitutional issue on the merits, the issue has been waived. In support of the latter claim, Albrecht points to the failure of Herald to raise the constitutional issue in the district court at trial stage, in this court on Albrecht's appeal, or in its brief in opposition to the petition for certiorari, as required by Supreme Court Rule 24(2). (3) The case does not involve a substantial constitutional question.

It is standard doctrine that when a district court is petitioned to convene a three-judge court under 28 U.S.C. § 2284 because of the alleged unconstitutionality of a state (28 U.S.C. § 2281) or federal (28 U.S.C. § 2282) statute, the district judge must dismiss the petition if the claim of unconstitutionality is insubstantial. Swift & Co. v. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); California Water Service Co. v. Redding, 304 U.S. 252, 254, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Ex Parte Poresky, 290

---

1. The constitutional provisions forming the basis of Herald's claim are those enumerated in its motion to dismiss the writ of certiorari, above discussed, and also in Judge Duncan's opinion. They will not be repeated in full here.

U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Johns v. Redeker, 406 F.2d 878 (8th Cir. 1969). The district court's inquiry "is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962). And as this court said in Johns v. Redeker, *supra*:

> "The trial court's determination of the lack of substantiality of the federal constitutional issue raised is reviewable by a Court of Appeals. Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865; Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed. 794. If no valid basis exists for the lack of substantiality determination this court's jurisdiction is limited to a reversal and remand with direction to convene a three-judge court."

█ In determining whether the action presented a substantial constitutional question which would necessitate the convening of a three-judge court, Judge Duncan applied the rule set out in California Water Service Co. v. Redding, *supra*, 304 U.S. at 255, 58 S.Ct. at 867:

> "The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject."

At the outset we realize, as Judge Friendly has stated, "these tests cannot be of mathematical precision. Previous decisions do not always foreclose new consideration even though they are directly on point, as the single district judges correctly thought in convoking three-judge courts in the second flag salute case * * * and in the desegregation case * * *. The other basis for finding lack of substantiality, obvi-

ous lack of merit, is still less precise; judges have not been fitted with identical lenses for detecting just when lack of merit is 'obviously' such." Green v. Board of Elections, 380 F.2d 445, 448 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968).

█ Application of the rule to this case leads us to conclude that the constitutional question presented in the complaint is plainly insubstantial.

It is significant that the constitutionality of 15 U.S.C. § 15 has never been judicially determined. Indeed, the constitutionality of the statute has, from the beginning, been taken for granted. See Chattanooga Foundry and Pipe Works v. Atlanta, 203 U.S. 390, 396–397, 27 S.Ct. 65, 51 L.Ed. 241 (1906). Although the Supreme Court has not ruled directly on the constitutional validity of the statute there are decisions of that Court which are relevant to the question before us.

We find an appropriate analogy in the Supreme Court's acceptance of punitive damages as a worthy legacy of our common law. As early as 1851, in Day v. Woodworth, 54 U.S. (13 Howard) 363, 371 [389, 398–399, 14 L.Ed. 181], the Court stated:

> "It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff."

And the Court upheld a Missouri statute's provision for double damages against due process and equal protection attacks in Missouri Pac. Ry. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463 (1885). The *Humes* Court held:

> "The power of the state to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether

at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries." *Id.* at 523, 6 S.Ct. at 114.

■ The Supreme Court has also upheld similar statutory provisions against one of the contentions urged here; namely, that provisions for both a criminal and a civil sanction for the same act subjects a defendant to double jeopardy in violation of the Fifth Amendment. Rex Trailer Co. v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956); United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). The *Rex Trailer* case involved the Surplus Property Act of 1944 which gave the government several civil remedies, including the collection of double damages, for a violation of its provisions. These civil remedies were in addition to all other criminal penalties and civil remedies provided by law. The Court held that the double measure of recovery fixed by Congress was not so unreasonable and excessive as to transform a civil remedy into a criminal penalty, and thus was not a provision for a second criminal prosecution in violation of the double jeopardy clause.

The defendants in the *Hess* case, *supra*, had already been subjected to criminal prosecutions under the former 18 U.S.C. §§ 80, 83 for defrauding the federal government by collusive bidding on P.W.A. projects when proceedings were instituted under 31 U.S.C. §§ 231–234 for damages based on the same transactions. These latter civil statutes provided that whoever committed any of the acts prohibited by the criminal statutes should forfeit to the United States $2,000 and double damages. Any person could sue in behalf of the government and retain one-half of the amount recovered. The Court upheld a $315,000 verdict in an action instituted under these provisions over the defendants' contention that they were placed twice in jeopardy in violation of the Fifth Amendment. With reference to double damages the Court stated:

"This remedy does not lose the quality of a civil action because more than the precise amount of so-called actual damage is recovered. * * * But in any case, Congress might have provided here as it did in *the anti-trust laws for recovery of 'threefold damages * * * sustained and the cost of suit, including a reasonable attorney's fee.'* 15 U.S.C. § 15. Congress could remain fully in the common law tradition and still provide punitive damages [citing Day v. Woodworth, *supra,* and Missouri Pac. Ry. v. Humes, *supra*]." *Id.* at 550–551, 63 S.Ct. at 387. (Emphasis added.)[2]

Hepner v. United States, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909), is also persuasive authority against Herald's position. The statute involved there, the Alien Immigration Act of 1903, provided for a forfeiture of $1,000 by a violator

2. And see Mr. Justice Frankfurter's concurring opinion in United States ex rel. Marcus v. Hess, *supra*, at 556, 63 S.Ct. at 390, where he states:
"But short of that which would offend the Eighth Amendment, statutes prescribing cumulative remedies have been commonplace in the history of federal legislation. The Sherman Law, * * * for example, allows four means of re- dressing a single offense—criminal prosecution, injunction, seizure of goods, and treble damages. If a *qui tam* action like the one now before us were to be provided by Congress as a further deterrent against violation of the Sherman Law, it would certainly be commonly regarded as an additional punishment. But the double jeopardy clause would nevertheless not come into play."

upon suit by the United States or any other persons for a violation of its provisions. In an action by the United States to collect the penalty, a verdict was directed against the offender. The Supreme Court, finding that the statute provided for a civil action to recover a penalty rather than for a criminal proceeding, rejected the contention that such a procedure violated his Sixth Amendment right to a jury trial as was available at common law.

The provision of 15 U.S.C. § 15 for a civil suit to collect treble damages is in addition to the criminal penalties for a violation of the antitrust laws. United States v. Borden Co., 347 U.S. 514, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954). It is a necessary adjunct to the criminal provisions and an aid to the enforcement of the salutary policies expressed by Congress in the enactment of the antitrust laws. As late as April 7, 1969, the Supreme Court observed:

"As the special provision awarding treble damages to successful plaintiffs illustrates, Congress has encouraged private antitrust litigation not merely to compensate those who have been directly injured but also to vindicate the important public interest in free competition. See Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 138–139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968)." Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495.

See also, Radovich v. National Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 326 F.2d 841, 846 n. 2 (2d Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964), quoting Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358, 365 (9th Cir. 1955).

Herald stresses what it regards as the "punitive" aspects of the statute. The argument seems to be that because the statute punishes it is criminal, and that only the government can punish for a wrong. Both premises are faulty. In the first place, it is not at all certain that such statutes are punitive. Vold, Are Threefold Damages Under The Antitrust Acts Penal or Compensatory?, 28 Ky. L.J. 117, 158 (1940). See Chattanooga Foundry, supra, 203 U.S. at 397, 27 S.Ct. 65 (Statute not penal for purpose of applying statute of limitation). And see Huntington v. Attrill, 146 U.S. 657, 667, 13 S.Ct. 224, 227, 36 L.Ed. 1123 (1892), where the Court said:

"Penal laws, strictly and properly, are those imposing punishment for an offence committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

Assuming arguendo that the statute is punitive in nature, "this is not enough to label it as a criminal statute," to which all the constitutional safeguards of a criminal proceeding attach. United States ex rel. Marcus v. Hess, supra, 317 U.S. at 551, 63 S.Ct. at 388. This is aptly demonstrated by the language of Judge Stone of the Court of Appeals of Maryland as quoted by the Court in Huntington v. Attrill:

"It is not very easy to give any brief definition of a criminal law. It may perhaps be enough to say that, in general, all breaches of duty that confer no rights upon an individual or person and which the state alone can take cognizance of, are in their nature criminal, and that all such come within the rule. But laws which, while imposing a duty, at the same time confer a right upon the citizens to claim damages for its nonperformance, are not criminal. If all the laws of the latter description are held penal in the sense of criminal, that clause in the constitution which relates to records and judgments is of comparatively little value. There is a large, and con-

stantly increasing, number of cases that may in one sense be termed penal, but can in no sense be classed as criminal. Examples of these may be found in suits for damages for negligence in causing death, for double damages for the injury to stock where railroads have neglected the state laws for fencing in their tracks, and the liability of officers of corporations for the debts of the company by reason of their neglect of a plain duty imposed by statute. I cannot think that judgments on such claims are not within the protections given by the Constitution of the United States." 146 U.S. 657 at 665, 13 S.Ct. at 226.[3]

If statutes such as 15 U.S.C. § 15 be criminal, what of the laws that allow an individual to sue to collect punitive damages for assault and battery and other torts which constitute wrongs to the society as well as to the individual injured? Do these laws authorize unconstitutional criminal prosecutions by private citizens?

■ The distinction between civil and criminal remedies is an ancient one. An act or omission may constitute a wrong against society punishable as a crime and a wrong against an individual redressable in a civil action for damages. Helvering v. Mitchell, 303 U.S. 391, 398–399, 58 S.Ct. 630, 82 L.Ed. 917 (1938). This does not make the civil suit a criminal action, as the Supreme Court has recognized. Rex Trailer Co. v. United States, *supra,* 350 U.S. at 150–151, 76 S.Ct. 219; United States ex rel. Marcus v. Hess, *supra,* 317 U.S. at 549–551, 63 S.Ct. 379; Hepner v. United States, *supra,* 213 U.S. at 108, 29 S.Ct. 474. Laws allowing punitive or exemplary damages to an injured individual for an act which is also a crime are multitudinous. All such laws would be voided under Herald's contention.

Even absent the above case authority, we believe Herald's claim must fall under the alternative test announced in *Red-*

*ding, supra,* as being obviously without merit. The many cases that have passed through the federal courts under 15 U.S.C. § 15 without an attack on its constitutionality attest to the lack of substance.

In our view the history of the Albrecht-Herald litigation has an impact upon this case.

Although the claimed constitutional infirmity of the treble damage statute was not raised in the district court, in this court on appeal, or in resistance to the petition for the writ of certiorari, it was the sole premise for Herald's motion to dismiss the writ which, as we have seen, challenged the jurisdiction of the Supreme Court to consider the case.

The Court did not summarily deny the motion, but ordered: "further consideration of motion * * . * to dismiss writ of certiorari postponed to hearing of the case on the merits." 389 U.S. 805, 88 S.Ct. 28, 19 L.Ed.2d 59. After the Court's decision, presumably in response to Herald's petition for rehearing, which again raised the constitutional issue, the motion to dismiss was denied.

We, of course, do not know with certainty why the Supreme Court proceeded as it did in disposing of the constitutional issue. We are not inclined, however, to assume that the Court completely ignored the matter. This conclusion is implicit in the order postponing consideration of the issue to the hearing on the merits. We prefer to believe, as Albrecht suggests, that the Court decided, after responsible consideration, that the issue had not been timely raised or that it was so lacking in substance as to warrant pretermitting discussion in the decision on the merits.

In any event we are of the firm view that the district court's dismissal of the action for want of a substantial constitutional question is in harmony with the rationale of the cases above discussed. Accordingly, the judgment of dismissal is affirmed.

---

3. See footnote 2, *supra.*