**In re GRAND JURY WITNESSES Sherrie Bursey and Brenda Joyce Presley.**

**Misc. No. 10410.**

United States District Court,
N. D. California.

Sept. 8, 1970.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Jerome K. Heilbron, Victor C. Woerheide, Brandon Alvey, Sp. Attys., U. S. Dept. of Justice, Washington, D. C., for the United States.

Garry, Dreyfus, McTernan & Brotsky, David E. Pesonen, San Francisco, Cal., for witnesses Bursey and Presley.

## MEMORANDUM OPINION AND ORDER

ZIRPOLI, District Judge.

This matter comes before the Court on application of the United States Attorney for the Northern District of California to compel respondents Sherrie Bursey and Brenda Joyce Presley, who appeared as witnesses before the Grand Jury for this District, to answer certain questions propounded to them by the Grand Jury. A copy of the pertinent testimony before the Grand Jury at its session of June 4, 1970, has been lodged with the Court pursuant to an order of limited disclosure entered by the Court.

The history of this matter reflects that respondents, after approval of applications for grants of immunity given by the Attorney General of the United States and upon a showing of a necessary public interest made by the United States Attorney and a finding by the Court that the applications were proper and should be allowed, were ordered by the Court to appear before the Grand Jury on May 13, 1970, to answer all questions propounded, save those specifically excepted under the Court's order. The order of the Court granted immunity to respondents in accordance with the provisions of Title 18 U.S.C. Section 2514.[1]

Thereafter, respondents claimed and established to the satisfaction of the Court that they were professional journalists in the employ of the Black Panther Newspaper, a weekly newspaper of general and national circulation. On that showing, the Court granted them a protective order entered on May 20, 1970, which provided that in their appearance before the Grand Jury they shall not be required to reveal confidential information received, developed or maintained by them as professional journalists; that they shall not be required to answer questions concerning statements made to them or information given them by confidential news sources, unless such statements or information were given to them for publication or public disclosure; that they shall be permitted to consult with their counsel at any time they wish during the course of their appearance before the Grand Jury; and that the Court will entertain a motion for modification of the order upon a showing by the Government of a compelling and overriding national interest in requiring the testimony of respondents which cannot be served by any alternative means. This so-called "journalist's privilege" was accorded them because the granting of immunity which is intended to protect a witness against self-incrimination and the right not to be prosecuted on account of his testimony does not carry with it a deprivation of the witness' rights to free speech, press and association.

The Government in support of its present motion to compel the respondents to answer questions propounded to them at the June 4th meeting of the Grand Jury has presented affidavits and other documentary evidence which the Government asserts demonstrate a compelling and overriding national interest which outweighs the individual First Amendment rights of respondents and any journalist's privilege in the area of free press to which they may be entitled.

The questions propounded to the witnesses, fall into two categories: those that do not impinge upon individual constitutional rights and those that impinge, or arguably could be said to impinge, upon such constitutional rights. As to the first category, the respondents must, of course, answer all questions falling therein. As to the second category, the Court is once again faced with the delicate and difficult task of resolving a conflict between the governmental or national interest of grand jury investigation of those engaged in, or substantially connected with those engaged in, criminal activities and the individual constitutional rights of witnesses. This calls for a weighing of the circumstances reflected in the record before the Court and an appraisal of the substantiality of the reasons advanced in support of the regulation of the free enjoyment of those rights.

In making its appraisal of the record and the reasons advanced in support of the Government's motion, the Court in no way intimates that it has any views as to any alleged subversive or criminal activities of the Black Panther Party or its Central Committee or any member or members of its newspaper staff. These are the very matters which are under investigation by the Grand Jury and they do not properly come before the Court

1. Section 2514 of Title 18 U.S.C. was held valid by the Court of Appeals for the Ninth Circuit on October 9, 1969, in Carter v. United States, 417 F.2d 384.

for determination until the Grand Jury upon a showing of probable cause that a crime has been committed returns an indictment.

■ All that the Court does is to evaluate the record to ascertain whether the facts and circumstances relied upon by the Government, though in greater part hearsay in character,[2] relate to a compelling and overriding national interest which so outweighs the individual constitutional rights of the respondents as to require them to answer all relevant questions consonant with the broad powers of the Grand Jury.

An evaluation of the record brings into play the nature and function of Grand Jury investigations; the nature and gravity of the criminal activity under investigation; and, as above indicated, the relevancy of the inquiries made to such criminal activity.

The Grand Jury, under the federal scheme, is an indispensable element in the administration of criminal justice. Under the Fifth Amendment to the Constitution, indictment by a Grand Jury is a matter of right in all felony cases. Hence, the facts relating to any serious offense must be brought to the attention of a grand jury preliminary to the initiation of prosecution for such offense by the return of an indictment. "The functions of that institution [grand jury] and its constitutional prerogatives are rooted in long centuries of Anglo-American history." Hannah v. Larche, 363 U.S. 420, 489, 490, 80 S.Ct. 1502, 1544, 4 L.Ed.2d 1307 (1959).

In performing its constitutionally imposed functions, which affect the rights and interests of both the innocent and the culpable against whom allegations may be made, the Grand Jury has broad powers and it has long been settled

"that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned." Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1918).

In calling a person as a witness, the grand jury has never been required to furnish him a program defining the crimes to be investigated or the person or persons against whom an accusation is sought. As observed in Blair v. United States, *supra*, at 282, 39 S.Ct. at 471:

"He [the witness] is not entitled to set limits to the investigation that the grand jury may conduct * * * It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labor, not at the beginning, Hendricks v. United States, 223 U.S. 178, 184 [32 S.Ct. 313, 56 L.Ed. 394]."

Earlier in Hale v. Hinkel, 201 U.S. 43, at 65, 26 S.Ct. 370, at 375, 50 L.Ed. 652 (1905), the Supreme Court said: "It is impossible to conceive that * * * the examination of witnesses must be stopped until a basis is laid by an indictment formally preferred, when the very object of the examination is to ascertain who shall be indicted."

A grand jury "investigation is not fully carried out until every available clue

---

2. Since "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act" and a defendant in a case in federal court may be required to stand trial and his conviction may be sustained where only hearsay evidence was presented to the grand jury

which indicted him, Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955), certainly no more need be required to establish the right to call a witness or to demonstrate an overriding national interest which justifies regulation of the individual constitutional rights of a witness.

has been run down and all witnesses examined in every proper way to find if a crime has been committed." United States v. Stone, 429 F.2d 138 (2nd Cir., decided July 7, 1970). This function was described by the Supreme Court in Wood v. Georgia, 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1961), as follows:

> "When the grand jury is performing its investigatory function into a general problem area, without specific regard to indicting a particular individual, society's interest is best served by a thorough and extensive investigation * * *."

■ The grand jury does not need to have probable cause to investigate; rather its function is to determine if probable cause exists. And if probable cause is not required to investigate, it follows that probable cause is not required to make the preliminary showing necessary to call a witness whose testimony may shed light on criminal activity which the grand jury *must* investigate if the national interest is to be effectively served. Only the grand jury can properly decide what may be useful to such an investigation, and if it has any meaningful role to play, this is a function it must have free from undue interference of the Court. As stated in United States v. United States District Court for the Southern District of Virginia, 238 F.2d 713 (4th Cir. 1956), cert. den. sub nom. Valley Bell Dairy v. United States, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365, "it must be remembered that, while a grand jury is not independent of the court, it is not subject to the court's directions and orders with respect to the exercise of its essential functions" (238 F.2d at 719), unless, of course, in its exercise of its function it encroaches upon constitutionally protected rights without the showing of an overriding national interest in justification thereof. Here, as will hereinafter be shown, a compelling and overriding national interest, arising from the nature of the grand jury's function and the criminal activity being investigated, exists and clearly outweighs the constitutional rights of the witnesses.

■ It should be borne in mind that a disclosure of facts revealed to and known to the grand jury would thwart its investigation. For this very reason, Rule 6(e) [3] of the Federal Rules of Criminal Procedure continues in effect the long established common law policy of maintaining the secrecy of grand jury proceedings and requires that, when disclosure is authorized by the Court, it should be done discreetly and limitedly. Hence, while the policy of maintaining secrecy of grand jury proceedings does not of itself warrant a denial of a witness's right to freedom of association or any other constitutional right, in balancing the national interest against such rights the Court in its consideration of the totality of the circumstances may with propriety give consideration to the nondisclosure provisions of Rule 6(e), which tend to give some measure of protection to a witness against the other-

---

3. Rule 6(e) of the Federal Rules of Criminal Procedure provides:

   "*Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."

wise devastating effect that public disclosure would bring to the individual's right of freedom of association.

This Grand Jury is currently and properly inquiring into matters which involve possible violations of Congressional acts passed to protect the person of the President (18 U.S.C. § 1751), to free him from threats (18 U.S.C. § 871), to protect our armed forces from unlawful interference (18 U.S.C. § 2387), conspiracy to commit the foregoing offenses (18 U.S.C. § 371), and related statutes prohibiting acts directed against the security of the government. In furtherance of that investigation the respondents, Bursey and Presley, who have associated with others engaged in some of the activities under investigation, have been immunized under 18 U.S.C. § 2514. The whole point of the investigation is to identify persons known to the respondents who may have engaged in activities violative of the above indicated statutes, and also to ascertain the details of their alleged unlawful activities. All questions directed to such objectives of the investigation are unquestionably relevant, and any other evaluation thereof by the Court without knowledge of the facts before the Grand Jury would clearly constitute "undue interference of the Court."

The persons with whose activities the Grand Jury is concerned are persons with whom respondents are known to have associated and are persons who are alleged to have publicly advocated killing and destruction to obtain their announced objective of overthrowing the Government of the United States. These persons are further alleged to have obtained weapons and explosives and to have attempted to advance their cause by murder, threats, shoot-outs and other criminal acts. Ample evidence to justify an investigation of such activity is readily apparent from the facts contained in the affidavit filed herein by an attorney for the Grand Jury and the documents offered in support thereof.[4] To permit the constitutional claims of respondents under such circumstances to thwart the Grand Jury investigation would seriously impair the national interest of self-preservation. Under such circumstances the answers sought from the immunized witnesses should not, and by any rule of rea-

---

4. The recitations contained in the affidavit of the attorney for the Grand Jury which was filed with the Court on September 3, 1970, clearly relate to matters which could seriously endanger the security of the government and are of such magnitude as to not only justify but demand Grand Jury investigation.

Among the statements and activities reflected in said affidavit are the following:

A statement attributed to David Hilliard, National Chief of Staff of the Black Panther Party, in which he is alleged to have, on November 15, 1969, publicly stated, among other things, "We will kill Richard Nixon," which statement was printed in the Black Panther Party newspaper in its issue dated November 22, 1969, and repeated in a statement by Ora Williams in its issue dated December 27, 1969;

An article in the Black Panther Party newspapers dated March 21 and May 2, 1970, entitled "To My Black Brothers in Viet Nam," attributed to Eldridge Cleaver, Minister of Information of the Black Panther Party, in which he urges his followers and readers as follows:

"* * * You need to start killing the racist pigs who are over there with you giving you orders. Kill General Abrams and his staff, all his officers. Sabotage supplies and equipment, or turn them over to the Vietnamese people. Talk to the other Brothers and wake them up. You should start now weeding out the traitors amongst you. It is better to do it now than to allow them to return home to help the pigs wipe us out. Especially the Uncle Tom officers should be dealt with now, because the pigs will use them as effective tools against our people. * * *;"

And other statements and evidence of activities attributed to Donald Cox, Field Marshal of the Black Panther Party, and Angela Y. Davis, an alleged member of the Party, which reflect that they are fugitives from justice with charges of assault to murder and conspiracy to murder pending against Donald Cox in Baltimore, Maryland, and charges of murder and kidnapping pending against Angela Y. Davis in Marin County, California.

son ought not to, be equated with information sought in cases similar to Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1956); NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1957), and Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1959). Here the Government seeks no general membership list of any organization. Its inquiry is directed to the names of persons who may be criminally liable for violations of federal statutes or might have specific information concerning such offenses.

With the foregoing considerations in mind, the Court, in weighing the respective social values of the conflicting interests presented, is satisfied that the Government has clearly and convincingly established a compelling and overriding national interest to which the conflicting constitutional rights of the respondents must give way. Here the national or governmental interest is paramount. Uphaus v. Wyman, 360 U.S. 72, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1958). Accordingly, respondents are directed and ordered to appear at the next meeting of the Grand Jury to which they are called and to then and there answer all unanswered questions propounded to them at the Grand Jury hearing of June 4, 1970. The United States Attorney is directed to prepare and present an appropriate formal order in accordance with the foregoing.