**In re GRAND JURY INVESTIGATION.**
**In the Matter of Amerigo FERRANTI.**
**Misc. No. 974 MCD.**

United States District Court,
M. D. Pennsylvania.
Aug. 7, 1973.

Thomas J. Hanlon, Scranton, Pa., for Amerigo Ferranti.

Clarence J. Nickman, Richard M. Walker, Attys., Dept. of Justice, Antitrust Div., Philadelphia, Pa., Paul J. Killion, Asst. U. S. Atty., Harrisburg, Pa., for the United States.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

At issue before this court is the government's request that Amerigo Ferranti be held in contempt for failure to answer questions before a federal grand jury.

Ferranti is a beer distributor doing business in Scranton, Pennsylvania. On March 15, 1973, two attorneys attached to the Antitrust Division, Middle Atlantic Division, Department of Justice, visited Ferranti at his office. The discussion lasted approximately one hour, after which the attorneys departed. Mr. Ferranti signed no written statement, nor was he apparently asked to do so.

Subsequently, Ferranti was subpoened to appear before a federal grand jury in Harrisburg investigating possible violations of federal antitrust laws with regard to the beer industry in his business locale. Mr. Ferranti declined to answer questions by counsel for the government and by the foreman, standing on his Fifth Amendment right against self-incrimination. Thereafter, upon application of the United States, the court

granted Ferranti use immunity pursuant to 18 U.S.C. § 6003.[1] Ferranti was returned to the grand jury and again refused to testify. As a result of Ferranti's refusals, the government has moved for a finding of contempt under 28 U.S.C. § 1826.[2] Section 1826 provides for punishment for a recalcitrant witness.

Counsel for Ferranti alleges the following arguments on behalf of his client:

1. That 18 U.S.C. § 6003 is unconstitutional requiring the convening of a three-judge panel to enjoin its application;

2. The March 15 interview violated Ferranti's Fifth and Sixth Amendment rights;

3. That as a result of the alleged violations of Ferranti's constitutional rights, any grand jury testimony would be "tainted" and may not be used at all by the government.

The court cannot agree with these arguments.

## I.

The witness requests a temporary restraining order staying the grant of immunity or any citation of contempt for refusal to answer grand jury questions. The remedies sought by Ferranti require a motion to convene a three-judge court.[3]

■ The government urges upon the court a dismissal of the petition on the grounds that it fails to seek to enjoin an act of Congress as required by 28 U.S.C. § 2282. The court cannot agree. Taking the petition most favorable to Mr. Ferranti, it clearly asks that the "order granting immunity . . . be temporarily restrained and stayed." The grant of immunity for Mr. Ferranti was

1. § 6003 provides:
 "(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
 "(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
 "(1) the testimony or other information from such individual may be necessary to the public interest; and
 "(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

2. § 1826 provides:
 "(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of

the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
 "(1) the court proceeding, or
 "(2) the term of the grand jury, including extensions,
before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.
 "(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal."

3. 28 U.S.C. § 2282 provides: "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

made pursuant to 18 U.S.C. § 6003. Section 2282 expressly forbids a single district judge from enjoining the application of a federal statute. It seems implicit therefore that the petition seeks the sort of relief requiring this court to consider the substantiality of the constitutional issues raised by Mr. Ferranti.

■ The question of a three-judge panel must be dispensed with concomitantly with the issue of the constitutionality of 18 U.S.C. § 6003. In order to convene a three-judge court it must be clear that the moving party has raised a "substantial" constitutional question. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129 (2d Cir. 1967); Mellinger v. Laird, 339 F. Supp. 434 (E.D.Pa.1972); O'Hair v. United States, 281 F.Supp. 815 (D.C. 1968); Harlan v. Pa. R.R., 180 F.Supp. 725 (W.D.Pa.1960).

■ A lack of a "substantial" constitutional argument is generally said to appear where its unsoundness clearly results from previous Supreme Court decisions or where it is obviously without merit. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Herald Co. v. Harper, 410 F.2d 125 (8th Cir. 1969).

The issue is not whether this court considers § 6003 to be constitutional, but whether the attack upon it is substantial. If this court concludes that the witness's constitutional arguments are insubstantial we must dismiss the petition for injunctive relief. Herald Co. v. Harper, *supra;* Stix Friedman & Co. v. Coyle, 340 F.Supp. 4, 6 (E.D.Mo.1972).

■ The thrust of Ferranti's attack on 18 U.S.C. § 6003 is essentially that it eliminates Fifth Amendment rights without due process of law.

The petitioner concedes, in the face of Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), that use immunity is coextensive with the scope of the Fifth Amendment privilege against self-incrimination and therefore sufficient to compel testimony over such a claimed privilege.

Petitioner contends, however, that the statute allows a non-judicial functionary (i. e., the United States Attorney) to *automatically* gain immunity without probable cause and thereafter violate the witness's right "to be let alone." Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Moreover, according to the petitioner, the witness's right of privacy is violated since the statute countenances "a governmental invasion of the most secret and intimate reaches of an individual's mind."

This court sees glaring defects in the attack on § 6003 which irreparably deprive it of the needed substantiality. The assertion of a right "to be let alone" is no more than an oblique attempt to destroy the entire concept of immunity. The Supreme Court has consistently concluded that there is no constitutional right to invoke the Fifth Amendment where immunity has been granted. Kastigar, *supra;* Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). To provide a flat right to witnesses granted immunity to assert a right of privacy would totally cripple even the broadest of transactional immunity.[4]

"[S]ome confidential matters are shielded from considerations of policy, and perhaps in other cases for special reasons a witness may be excused from telling all that he knows.

"But, aside from exceptions and qualifications—*and none such is asserted in the present case*—the witness is bound not only to attend but to tell what he knows in answer to questions framed for the purpose of bringing out the truth . . ..

"He is not entitled to urge objections of incompetency or irrelevancy

---

4. Cited with approval in Kastigar v. United States, 406 U.S. 441, 443 n. 2, 92 S.Ct. 1653, 32 L.Ed.2d 212.

. . . for this is no concern of his (citation omitted) . . ..

*"He is not entitled to set limits to the investigation that the grand jury may conduct."* 250 U.S., 281–282, 39 S.Ct., 471 (Emphasis added)

Here petitioner has refused to answer even the preliminary question concerning his business address. This blanket refusal squarely places him in the same category as BLAIR, failing to assert any specific privileges.[5]

This court is of the opinion that petitioner's Fifth Amendment attack on § 6003 is insubstantial in view of the line of decisions contrary to it. California Water Service Co., *supra.*

The petitioner's second objection to § 6003 is equally without merit. He contends that the statute permits the United States Attorney (with Justice Department approval) to obtain a grant of immunity as a matter of right (see n. 1, *supra*). The petitioner's chief complaint regarding this "unfettered discretion" is directly tied to his assertion that the statute is violative of the Constitution.

The witness cites no authority but argues that the power to destroy the right of privacy should not rest with the Department of Justice. The argument erroneously presumes a Fifth Amendment right over and above that dealt with in Kastigar, *supra.*

In In re Grand Jury Witnesses Bursey and Presley, 322 F.Supp. 573, 576 (N.D. Cal.1970), the court said:

"The Grand Jury does not need to have probable cause to investigate; rather its function is to determine if probable cause exists. And if probable cause is not required to investigate, it follows that probable cause is not required to make the preliminary showing necessary to call a witness whose testimony may shed light on criminal activity which the grand jury *must* investigate if the national interest is to be effectively served. . . . Only the grand jury can

properly decide what may be useful to such an investigation . . . ." (Emphasis in original)

■ It is axiomatic that the United States Attorney is merely the agent of the grand jury insofar as he is the individual who seeks immunity on behalf of the grand jury. To compel him to have probable cause would be an indirect method of requiring probable cause of a grand jury. This the court will not do.

In short, the petitioner's claim does not rise to the level of constitutional magnitude and fails as "obviously without merit." California Water Service Co., *supra*; Herald Co., *supra.*

## II.

The petitioner asserts that his Fifth and Sixth Amendment rights were abridged during the March 15 meeting which occurred in Mr. Ferranti's office. As a result the court conducted a hearing to determine the factual events surrounding the meeting. The two government attorneys (Messrs. Walker and Nickman) and Mr. Ferranti each testified as to the occurrences. The significance of the alleged violations is discussed in Part III.

The primary issue as this court views it, is whether the meeting in Ferranti's office was custodial in nature so as to require a Fifth Amendment warning against self-incrimination and whether the meeting constituted a "critical stage" requiring counsel's presence.

Even taking the disputed facts most favorable to Mr. Ferranti, this court is of the opinion that he has failed to reveal any transgressions of constitutional magnitude.

### A. Fifth Amendment Rights

Two primary allegations by Mr. Ferranti compose his major assertion that he should have been given his Miranda warnings. First, the attorneys misrepresented their visit as a "study" of liquor pricing, and second, that he had

5. See, Blau v. United States, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951).

been placed in fear of the attorneys by virtue of a newspaper article in a local newspaper describing a possible investigation by the government.[6] That fear, asserts Ferranti, made the meeting in his office custodial enough to warrant warnings.

This court finds the two contentions to be inherently contradictory. If Mr. Ferranti was genuinely fearful of the agents, and aware (by virtue of the article) of their true purpose, then he could not have been deceived by any claim that the attorneys were conducting a "study." If, on the other hand, he *believed* the interview to be a "study," then the paralytic fear he describes could not have in fact existed.

 More important, however, is the fact that government agents need not describe the extent of their investigation to a prospective interviewee. United States v. Parenti, 326 F.Supp. 717, 723 (E.D.Pa.), aff'd, 470 F.2d 1175 (3d Cir. 1972). In order to have a circumstance requiring Miranda warnings, the Third Circuit has concluded there must be a "meaningful restraint" imposed on the witness's "freedom of action." United States v. Jaskiewicz, 433 F.2d 415, 419 (3d Cir. 1970). The Jaskiewicz case involved a failure to give Fifth and Sixth Amendment warnings to a party in a tax audit. There the court ruled that the test was "solely" whether the statements made were voluntary, 433 F.2d, at 420. *See also,* Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 376 (1969) in which

Mr. Justice Black described the test of custody to be whether the witness is "deprived of his freedom of action in any significant way." 394 U.S., at 327, 89 S.Ct., at 1097.

In United States v. Webb, 398 F.2d 553 (4th Cir. 1968) the subject of an ICC investigation signed a written statement without being informed of his Fifth and Sixth Amendment rights. The court upheld the subsequent use of the statement, noting that the entire interview occurred in his own office and that the agents did not possess the power of arrest. The witness in the instant case signed nothing, nor was he asked to. Similarly, the agents in the instant case possessed no power of arrest.

The case of United States v. Caiello, 420 F.2d 471 (2d Cir. 1969), is also compelling. There the witness was the subject of an IRS investigation in which he was not informed of his rights against self-incrimination. The Second Circuit rejected the defendant's arguments noting that the Fifth Amendment is intended to prevent the government from *compelling* testimony. The court reiterated its opinion in United States v. Squeri, 398 F.2d 785, 790 (2d Cir. 1968) where it wrote:

"It was the compulsive aspect of custodial interrogation, and not the strength or extent of the government's suspicions at the time the questioning was conducted, which led the court to impose the *Miranda* requirements. . . . We believe that the presence or absence of compelling pressures, rather than the stage to which the

6. The newspaper article in question, reproduced here in part, appeared January 14, 1973 in the Scranton *Sunday Times*:

"Area residents who may not be too happy about a beer price increase scheduled for this area on Monday can find some solace in the fact that the federal government may also take a rather dim view of the proposed hike.

"And in the government area consumers would have a strong ally capable of challenging the price increase in court.

"Whether such a move will be made is only speculative at this point, but a spokesman for the Department of Justice told The Sunday Times during the past week that his agency

will look into the events surrounding the proposed increase for malt beverages.

"The government's attack on the increase, if it eventually decides to take to the battlefield against the price boost, would in all likelihood be based on the contention that federal anti-trust laws may have been violated during the events leading up to the increase.

"It is against federal law for the owner of one business firm to get together with the head of a competing firm and agree to raise prices. Such a practice is known as collusion or price-fixing."

government's investigation has developed, determines whether the *Miranda* requirements apply. . . ."

■ The sole "compelling" or paralyzing pressure claimed by Mr. Ferranti was his awareness via a news article that the price increases might be investigated (see n.6, *supra*). To find this to be a "significant" restraint on his "freedom of action" is patently beyond reason. As the court noted in Caiello, *supra*:

"[I]f the . . . [party] is aware that he is the subject of [an] . . . investigation and if he is interviewed in noncustodial situations, *Miranda* warnings are not required. . . . [It] is not improper to expect that 'to some extent persons must be expected to look after themselves.' Morgan v. United States, 377 F.2d 507, 508 (1st Cir. 1967)."

This court finds no Fifth Amendment violations to have occurred.

### B. Sixth Amendment Rights

■ The petitioner originally asserted that Sixth Amendment right to counsel had been abridged at the March 15 meeting. This he has all but abandoned in his supplemental memorandum, conceding that Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) is controlling. Nothing in the facts can raise the meeting to the level of a "critical stage" as required in Kirby.

Moreover, Webb, *supra*; Jaskiewicz, *supra*; and Caiello, *supra,* each flatly rejected any Sixth Amendment right at a non-custodial meeting.

This court can find no arguable basis upon which to build a right to counsel arising out of the March 15 meeting.

### III.

The petitioner's third argument presupposes the validity of his second. Assuming *arguendo* that Mr. Ferranti's Fifth and Sixth Amendment rights were violated during the March 15 meeting, do such improprieties "taint" all his potential grand jury testimony notwithstanding a grant of immunity? The petitioner answers affirmatively, directing the court's attention to three cases he finds controlling.

In Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1920), Mr. Justice Holmes declared:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, but that *it shall not be used at all*. . . . 251 U.S., at 392, 40 S.Ct., at 183. (Emphasis added)

To seal the analogy, Ferranti points to In re Grand Jury Proceedings, Harrisburg, Pennsylvania: In the Matter of Egan, 450 F.2d 199 (3d Cir.), aff'd sub nom. Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

In Egan, the witness declined to testify before a grand jury even after a grant of immunity, asserting that she had been subject to an illegal wiretap. The Court of Appeals reversed the district court's contempt citation and was affirmed by the Supreme Court.

The petitioner argues by analogy that the government unconstitutionally obtained evidence from him and should not now be permitted to put that evidence before the grand jury by a mere grant of immunity. The cases cited by petitioner are inapposite.

Silverthorne involved a subpoena duces tecum which the defendant refused to honor. The court reversed the defendant's contempt conviction because the government had used unconstitutional methods to originally discover the evidence. However, Silverthorne had been *re*-indicted on a criminal offense based on information wrongfully obtained during his original arrest. It was that physical evidence which was the subject of the subpoena. Silverthorne was both a party to a criminal prosecution and unprotected by any grant of immunity.

The Gelbard ruling is even less persuasive. In affirming Egan, the Court

expressly noted that it was in no way reaching *any* Fourth Amendment contentions whatever. 408 U.S., at 45 n.5, 92 S.Ct. 2357. Instead, the Court concluded that the issue turned on a construction of Title III of the Omnibus Crime Control Act (*Id.*) That Act, particularly 18 U.S.C. § 2515, states:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and *no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court* [or] *grand jury* . . . if the disclosure of that information would be in violation of this Chapter." (Emphasis added)

In the Circuit Court's ruling in Egan the majority reached the Fourth Amendment issue and concluded that a grand jury witness could indeed invoke such constitutional violations as grounds to refuse to testify.[7] There is in this court's view a marked distinction between the Fourth and Fifth Amendment issues delineated in Egan and the instant case.[8]

 The Fourth Amendment privilege against illegal searches and seizures raises an actionable wrong complete in and of itself. *See, e. g.,* Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The same is not true of evidence obtained in violation of the Fifth Amendment. A violation of a person's right against self-incrimination is not actionable as per Bivens, nor is such evidence excluded for all purposes. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

It would be sheer fantasy to contend that a cause of action á la Bivens would exist where government agents inveigled a party into an incriminating admission, then did nothing with the data. Such an argument is even less substantial in view of Harris, *supra,* which permits evidence obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to be used to impeach a defendant who takes the stand voluntarily. In accord is Bacon v. United States, 446 F.2d 667, 669 (9th Cir. 1971) in which the court wrote:

"[A]ssuming . . . that such arrest and detention is invalid, we do not agree that it "tainted" the immunity and contempt proceedings. . . ."

In United States v. Weinberg, 439 F. 2d 743, 749 (9th Cir. 1971), the court set down a distinction relevant at this juncture:

"The Fourth Amendment is usually thought of as extending to searches for, and seizures of, tangible items. However, . . . it extends also to the recording of illegally overheard oral statements. But compelled grand jury testimony is neither a search for, nor seizure of, oral statements in the sense envisioned by the Fourth Amendment."[9]

 It further bears noting that a grant of immunity in a Fourth Amendment situation does not undo the previous harm; whereas, the harm created by wrongfully inducing self-incrimination does not arise unless and until prosecution, the Fifth Amendment privilege being a personal one. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); Johnson v. United States, 228 U.S. 457, 458, 33 S. Ct. 572, 57 L.Ed. 919 (1913); In re Grand Jury Investigation, in Matter of Isadore Bellis, 483 F.2d 961 (3d Cir. 1973).

---

7. It should be noted that the petitioner backhandly refers to his right of privacy, but only in the context of being compelled to reveal information to the grand jury. He has not asserted that the government attorneys violated his right of privacy by virtue of the March 15 conversation conducted in Mr. Ferranti's office.

8. *See generally,* Comment, The Statutory and Constitutional Protections from Illegal Wiretapping Available to an Immune Witness Before a Federal Grand Jury, 76 Dick.L.Rev. 86 (1971).

9. *See also,* In re Grand Jury Witnesses Bursey and Presley, 322 F.Supp. 573 (N.D.Cal. 1970).

■ Because there is not an absolute bar on evidence obtained in violation of Miranda, and because there is no private actionable wrong created by a Fifth Amendment violation; and further, because a witness cannot control the issue of relevancy in a grand jury hearing (Blair, *supra*), it follows that a witness granted immunity cannot assert the Fifth Amendment to block his own testimony after being granted immunity.

Accordingly, the request of the government that Amerigo Ferranti be held in contempt pursuant to 18 U.S.C. § 1826 will be granted unless the said Amerigo Ferranti appears before the grand jury and testifies or provides other information at its next meeting in Harrisburg, Pennsylvania.

It is so ordered.